## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CASTRO & CO., LLC,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:18-cv-00574-M** |
| **DIAMOND OFFSHORE SERVICES** | § | |
| **LIMITED, JANE MUNOZ AND** | § | |
| **EMILY ROSENBURG,** | § | |
| *Defendants.* | § | |

### Memorandum in Support of Defendant Diamond Offshore Services Limited's Motion for Rule 11 Sanctions

Defendant, Diamond Offshore Services Limited, seeks sanctions against (1) plaintiffs, Castro & Co. LLC and Johann Rabe, (2) John Anthony Castro (Castro), and (3) Plaintiffs' counsel, Mr. Joshua Scott Milam (collectively Plaintiffs' Team), for filing complaints, **ECF 1 & 14**, in violation of Federal Rule of Civil Procedure 11.

## A. Introduction

1.  Plaintiffs are Rabe (Rabe) and Castro & Co.; Defendant[1] is Diamond.

2.  Castro & Co. sued Diamond because Diamond would not issue Corrected Wage and Tax Statements (IRS Form W-2Cs) to a non-U.S. citizen—Rabe—without all the documentation required by the IRS. **ECF 1, 9, & 10**. Plaintiffs recently amended their petition, adding Rabe as a plaintiff, and alleging fraud, tortious interference, and statutory violations. Plaintiffs seek damages and declaratory relief. **ECF 14, 17, & 18**.

---

[1] Defendants Munoz and Rosenberg have been dismissed pursuant to Castro & Co.'s March 16, 2018, Notice of Voluntary Dismissal. See **ECF 4** (dismissal prior to appearance; effective upon filing).

3.   Rabe has been a Diamond employee for over a decade. When Rabe was hired, he represented that he was a lawful permanent U.S. resident. Accordingly, Diamond classified Rabe as such for U.S. federal-tax purposes. As a withholding agent, Diamond also withheld from Rabe's compensation—and remitted to the IRS—Rabe's *employee* portion of federal-employment (*i.e.*, FICA) taxes. Diamond also incurred and remitted to the IRS Diamond's *employer* portion of Rabe's FICA taxes.

4.   In 2017, Diamond was contacted for the first time by Castro, who requested that Diamond issue Form W-2Cs—for the years 2009 through 2016—in order to reflect Rabe's purported non-resident tax status. Castro represented to Diamond that Rabe relinquished his Green Card in 2008, and as a result became a non-resident for U.S. federal-tax purposes.  Castro advised that Form W-2Cs were being requested from Diamond so that Rabe could use the forms to obtain a refund from the IRS of Rabe's *employee* portion of the FICA taxes remitted to the IRS by Diamond on Rabe's behalf.

5.   For tax purposes, a lawful permanent resident generally continues to be classified as a U.S. tax resident until his status has been administratively or judicially determined to have been abandoned.  26 U.S.C. 7701(b)(1)(A); 26 U.S.C. 7701(b)(6); Treas. Reg. § 301.7701(b)-1(b)(1). To terminate U.S. tax residency by abandonment, a lawful permanent resident must submit either an Application for Abandonment (I-407) or both a letter stating his intent to abandon his residency status and an Alien Registration Receipt Card (Form I-151 or I-551, as may be updated) with the U.S. Citizenship and Immigration Services (USCIS) or a consular officer.  Treas. Reg. §301.7701(b)-1(b)(3).

2

6.  Despite Diamond's *multiple* requests for documentation proving the termination of Rabe's tax residency, Plaintiffs' Team never provided documentation confirming that the (incomplete) Form I-407 provided to Diamond was accepted and processed by the USCIS or by a consular office. Without documentation establishing the termination of Rabe's tax residency, Diamond cannot verify Rabe's purported non-resident tax status, and cannot issue Form W-2Cs without being exposed to liability and/or penalties.

7.  Plaintiffs' Team had opportunities to resolve this matter with the IRS, but failed to do so. Communications between the parties also make clear that Plaintiffs' Team is well aware that it has not produced documentation sufficient to justify Diamond's issuance of Form W-2Cs. Now, rather than provide the documentation required by law for Diamond to issue IRS Form W-2Cs, Plaintiffs' Team is trying to strong-arm Diamond into submission. Despite constant threats of federal litigation by Plaintiffs' Team, Diamond has continuously tried to work with Plaintiffs' Team *for over a year*, even hiring a tax lawyer—at Diamond's expense—to provide tax advice on this matter.

8.  If Diamond were to issue IRS Form W-2Cs based on the materials provided, Diamond could be subject to a multitude of penalties.  For example, 26 U.S.C. § 6721 imposes a penalty against any person for inclusion of incorrect information on an information return; and 26 U.S.C. § 6722 imposes a penalty against any person for inclusion of incorrect information on a payee statement.  Furthermore, as Diamond is aware of the lack of substantiating documentation regarding Rabe's residency status, Diamond would likely not be able to assert a reasonable-cause defense to any penalties.

9.  To be clear, if Plaintiffs would simply provide the required documentation, both Rabe *and Diamond* would be eligible to request a tax refund for their respective portions of the FICA taxes remitted to the IRS. In other words, Diamond has an affirmative incentive to issue Form W-2Cs—a tax refund of its own. But Diamond cannot amend the Form W-2Cs or request a refund without all the evidence that the IRS requires in order to amend Rabe's non-resident tax status without exposing Diamond to liability.

10. Furthermore, there appear to be procedures permitted by law that Plaintiffs' Team could undertake in order to obtain a refund of Rabe's portion of employment taxes *without* Diamond having to issue Form W-2Cs. Diamond has advised Plaintiffs' Team of this; it appears Plaintiffs have not elected to use those procedures.

11. Plaintiffs' amended complaint alleges that Diamond failed to comply with the law by not issuing Form W-2Cs to Rabe. Plaintiffs further allege that, by not issuing the Form W-2Cs, Diamond is somehow committing fraud, tortious interference, and breach of a (non-existent) fiduciary duty. **ECF 17 and 18.** Plaintiffs seek unspecified damages and an injunction compelling Diamond to issue the Form W-2Cs. Plaintiffs' claims are without basis in law or fact, and are the subject of a motion to dismiss. *Id.*

12. Simply put, Plaintiffs are using litigation in this Court as a means to an end. Plaintiffs have been unsuccessful in resolving Rabe's dispute with the IRS, and are now trying to force Diamond to make a Hobson's choice: Either absorb significant costs defending itself from frivolous litigation or capitulate and agree to do Plaintiffs' bidding.

4

13. The approach taken by Plaintiffs' Team—*i.e.*, make it impossible to justify the cost of the fight—is improper and sanctionable. Diamond moves for sanctions against Plaintiffs' Team in an amount to be determined by the Court, but bearing in mind Diamond's reasonable trial-attorney's[2] fees expended to-date.

14. After being served, Diamond advised Plaintiffs' Team that it intended to file a motion for sanctions related to Castro & Co.'s original complaint. In response, Castro instructed Diamond to file the motion for sanctions "or shut the hell up."

> **From:** John Anthony Castro, J.D., LL.M. [mailto:j.castro@castroandco.com]
> **Sent:** Monday, April 02, 2018 6:42 PM
> **To:** Tony Weiner <adw@doblaw.com>; Joshua Scott Milam, J.D., LL.M. <j.milam@castroandco.com>; 'Rossmiller, Lisa' <lisa.rossmiller@nortonrosefulbright.com>; Executive Office Manager, Alfonso Garza <a.garza@castroandco.com>
> **Cc:** 'Maddux, Cortlan' <cmaddux@dodi.com>
> **Subject:** RE: Castro & Co LLC - Additional Information (4/2/18) - FRCP 11 safe-harbor notification
>
>
> Motion for sanctions or shut the hell up.  We're not dismissing the case.

**ECF 12-1** at *1. As directed by Castro, Diamond served a draft motion for sanctions on Plaintiffs' Team on April 12, 2018. **ECF 12-1** at *9-28.

15. Upon receipt of the draft motion, Castro responded similarly to his initial email, advising Diamond to "Just file the damn motion so you can get laughed out of the courthouse and the adults can focus on actually resolving this case."

---

[2] Diamond seeks only recovery of its trial-attorney's costs and expenses; at this time, Diamond is not seeking recovery of the costs and expenses incurred with respect to the work performed by its outside tax counsel since this case was filed.

5

From: John Anthony Castro, J.D., LL.M. [mailto:j.castro@castroandco.com]
Sent: Thursday, April 12, 2018 2:48 PM
To: Tony Weiner <adw@doblaw.com>; Joshua Scott Milam, J.D., LL.M.
<j.milam@castroandco.com>; Executive Office Manager, Alfonso Garza
<a.garza@castroandco.com>
Cc: 'Maddux, Cortlan' <cmaddux@dodi.com>; Rosenberg, Emily
<erosenberg@dodi.com>; 'Rossmiller, Lisa'
<lisa.rossmiller@nortonrosefulbright.com>
Subject: RE: Castro & Co LLC - Additional Information (4/2/18) - FRCP 11 safe-
harbor notification

Weiner,

Just file the damn motion so you can get laughed out of the courthouse and the
adults can focus on actually resolving this case.

_____

CASTRO & CO.

**John Anthony Castro, J.D., LL.M.**
International Tax Attorney

**ECF 12-2** at *1. Incidentally, Castro is not an "International Tax Attorney," as stated in his signature line. He is not an attorney, and has been admonished by the Florida Bar (1) not to represent to the public that he is an attorney, (2) that "being a law school graduate does not authorize you to hold yourself out as an attorney, and (3) that "using J.D., or a title indicating that you are a lawyer to give the impression that you are a licensed attorney, is improper." **Ex. 8** at *1 (letter from Florida Bar to IRS regarding Castro's unauthorized practice of law) and *10 (letter from Florida Bar to Castro for failing to respond to the investigator in the Unlicensed Practice of Law Department). Notwithstanding the Florida Bar's admonitions (July 2016 and Oct. 2016), Castro continues to hold himself out as an attorney. By way of example, note the representations made above in his email identifier, as well as in his signature block.

16. Plaintiffs' Team received an exact copy of this motion at least 21 days before filing this motion with the Court. **ECF 12 & 12-1[3]**; Fed. R. Civ. P. 11(c)(2).

## B. Argument

17. A court may impose sanctions on a party, an attorney, or a law firm for presenting a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—for an improper purpose, such as to harass or cause unnecessary delay or expense. Fed. R. Civ. P. 11(b)(1), (c)(1).

18. The filing of Plaintiffs' [*sic*] Original Complaint, **ECF 1**, and Plaintiff's [*sic*] First Amended Complaint, **ECF 14**, violate Rule 11(b). Put simply, Plaintiffs filed their complaints for an improper purpose: To harass Diamond, cause Diamond unnecessary expense, and use a lawsuit as a way to extract unwarranted concessions from Diamond.

### 1) Filing for an Improper Purpose – Fed. R. Civ. P. 11(b)(1)

19. Plaintiffs' Team filed complaints for the improper purpose of harassing Diamond and needlessly increasing litigation costs. Fed. R. Civ. P. 11(b)(1); *Welk v. GMAC Mortg., LLC*, 720 F.3d 736, 738-39 (8th Cir. 2013); *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

20. Plaintiffs' Team is well aware that Diamond did nothing wrong and is simply following the law. The failures here are due to Plaintiffs' inability or unwillingness to provide the documents Diamond requires, as well as Plaintiffs' Team's inability or

---

[3] Plaintiffs' Team received an *identical* version of this memorandum on June 28, 2018. Further, Plaintiffs' Team also received a functionally identical version—*but for slight variance in Paragraph 16 and the addition of this footnote*—more than 21 days ago. *See* ECF 21, 22, and 24.

unwillingness to use IRS-permitted procedures to obtain a refund of Rabe's portion of FICA taxes *without* Diamond's involvement.

21. To be clear, Diamond has been trying to resolve this issue for Rabe *for years*, and Diamond has been working cooperatively with Plaintiffs' Team for over a year. **Ex. 1**. Diamond has consistently asked Plaintiffs' Team for evidence that Rabe terminated his U.S. federal tax-residency status, including evidence that Rabe filed an Initial and Annual Expatriation Statement (IRS Form 8854), a form required to be filed with the IRS when a U.S. tax resident terminates their permanent residency.

22. See, for example, this communication to Castro in October 2017:

> **From:** Munoz, Jane [mailto:jmunoz@dodi.com]
> **Sent:** Monday, October 2, 2017 1:55 PM
> **To:** Executive Office Manager, Alfonso Garza <a.garza@castroandco.com>
> **Cc:** Campbell, Terri <TCAMPBELL@DODI.com>; Black, Bonnie <BBLACK@DODI.com>; John Anthony Castro, J.D., LL.M. <j.castro@castroandco.com>; Sobel, Aaron <asobel@dodi.com>
> **Subject:** RE: Case Update | Forms W-2C Need to Be Filed
>
> Mr. Garza:
>
> Bonnie informed me of your discussions by email below. Our tax counsel informed us a number of years ago that, in order to remove him from the US payroll for tax and Social Security purposes, we must have evidence of his relinquishment of his green card and his tax clearance from the IRS. We have asked numerous times for proof in the form of a filed Form 8854 with the IRS and acceptance of that form by the IRS. The date of filing is important for Diamond to know when to remove him from the US tax reporting obligation.
>
> If Mr. Rabe or you can produce this or written confirmation from the IRS that they have accepted his relinquishment as of a certain date, we would be able to make the changes as requested.

**Ex. 1** at *9. In response, Castro conceded that it was Rabe's "failure to notify you all for a decade that he was no longer a U.S. green card holder that caused all of this," yet Plaintiffs' Team continues to threaten Diamond to try and force Diamond's hand, stating that "if it doesn't get fixed now, it's no longer his fault." **Ex. 1** at *9.

23. Diamond implored Castro to provide the required documentation, even highlighting for Castro the specific Treasury regulations stating that a Form 8854 is required to establish the termination of Rabe's U.S. tax residency tax status:

> "Until you file Form 8854 and notify the Department of State or the Department of Homeland Security of your expatriating act, your expatriation for immigration purposes does not relieve you of your obligation to file U.S. tax returns and report your worldwide income as a citizen or resident of the United States."

**Ex. 1** at *6 (emphasis in original). In response, Castro continued to demand that Diamond change Rabe's tax-residency status "immediately," and that "failure to fulfill these requests will result in a federal lawsuit." Castro then referred Diamond to Castro's "Tax Litigator, *Joshua Scott Milam, J.D., LL.M.*," whom Castro copied on the email. **Ex. 1** at *4. Castro further directed Mr. Milam to "go ahead and start preparing a federal lawsuit" because "Rabe is suffering irreparable harm while his company refuses to admit and correct their mistake...."[4] **Ex. 1** at *4.

24. Notwithstanding threats of federal litigation, Diamond advised Plaintiffs' Team that Diamond "reached out to our outside tax counsel (Ms. Lisa Rossmiller of Norton Rose Fulbright) for an opinion on the documentation that Rabe has provided.... Based on her review...the documentation provided by Rabe is not sufficient...." **Ex. 2** at *4.

---

[4] It is also noteworthy that, despite Castro stating that it was *Rabe* that was suffering harm, the original complaint filed by Mr. Milam included only one plaintiff: *Castro & Co.* **ECF 1**. Rabe was not added as a plaintiff until after Diamond moved to dismiss the original complaint. **ECF 9, 10** (motion to dismiss and memorandum in support); **ECF 14** (Plaintiff's [*sic*] First Amended Complaint). Diamond's motion to dismiss Plaintiffs' amended complaint has been filed and is currently pending. **ECF 17, 18.**

25. Diamond provided Plaintiffs' Team specific quoted language from Diamond's outside tax counsel. *Id.* Diamond even advised that they "are certainly happy to review any and all additional information…including documentation that Rabe's I-407 was accepted by the USCIS or a consular's office, or a letter from the IRS affirmatively confirming that Rabe was not a US tax resident for the identified years." *Id.*

26. In response, Castro *conceded* that Plaintiffs' Team had <u>not</u> produced a processed I-407: Castro "contacted an immigration attorney to see how we can obtain the final processed version of the Form i-407. We should have an answer soon." **Ex. 2** at *2-3.

27. Plaintiffs' Team then consulted an immigration lawyer, Ms. Ksenia Maiorova, claiming that Diamond "was being a ridiculous" [*sic*] by demanding proof that Rabe relinquished his U.S. federal tax-residency status:

> "Diamond Offshore is being a ridiculous [*sic*] and saying the Form i-407 [*sic*] we provided (attached) is not sufficient….They are requesting that you obtain the completed and processed version…so that they know it was, in fact, accepted and processed even though there's a consular signature on the current version (see attached). I've copied an Immigration Attorney, Ksenia Maiorova, on this email to provide insight on how we might be able to obtain a copy of the processed version of the i-407 [*sic*]."

**Ex. 3** at *10. In response, Plaintiffs' own immigration attorney hits the nail on the head, stating "Let's hope it was not submitted at a US Consulate or Embassy, because getting records from them through FOIA is nearly impossible." **Ex. 3** at *9. The email string continues, with Rabe representing to Plaintiffs' Team that the form "was submitted at the US Consulate in Rio De Janiero, Brasil." **Ex. 3** at *7.

28. In fact, Castro even asked an immigration specialist if the form provided to Diamond—*i.e.*, the "proof" Plaintiffs consistently rely on—would even qualify as sufficient evidence of Rabe's status. **Ex. 3** at *5. And, like Diamond had already advised, Plaintiffs' own immigration lawyer confirms Diamond's analysis: "It's incomplete at the bottom, but you can try." **Ex. 3** at *4.

29. To be clear, the problem is that Rabe claims to have submitted an I-407 to a U.S. Consulate, but, despite repeated requests, has never produced a complete copy of it. **It is not Diamond's fault that Rabe will not or cannot produce a document required by the IRS to establish that he terminated his U.S. federal tax residency.**

30. And how does Diamond know about all of these otherwise-privileged communications between Plaintiffs' Team? Because Plaintiffs' Team disclosed them to Diamond's in-house counsel, Ms. Rosenberg, *and* to Diamond's outside tax counsel, Ms. Rossmiller of Norton Rose Fulbright, along with both *another concession* regarding the incomplete nature of his client's documents <u>and</u> shifting the blame to the U.S. Consulate, stating "Consulates are known for their incompetence…." **Ex. 3** at *3.

31. Even after all of this, Diamond still tried to work with Plaintiffs' Team, including agreeing to participate in a conference with an IRS agent (to determine if there was a way to satisfy Rabe's request without exposing Diamond to liability) <u>and</u> directing Plaintiffs' Team to IRS procedures to obtain a refund of Rabe's employee-portion of his employment taxes without Diamond issuing Rabe IRS Form W-2Cs. **Ex. 4** at 13.

32. In short, Diamond has gone above and beyond its obligations to assist Rabe. As it stands, the only impediment to Rabe getting what he wants is himself and his team.

33. Having been unsuccessful procuring documents from its own client, Castro turned his threats of federal litigation into a reality. On March 13, 2018, Plaintiffs' Team filed a federal lawsuit against Diamond and two individual Diamond employees, **ECF 1**, with the sole plaintiff being Castro & Co. (and not even listing Rabe as a person with a financial interest in the outcome of the litigation). **ECF 5.**

34. After filing its frivolous complaint, Plaintiffs' Team contacted Diamond to advise Diamond that the lawsuit had been *filed*, but not *served*, in order to "provide one last opportunity to get this resolved with a W-2C." **Ex. 4** at *13. Most tellingly, Castro even elected to reveal the true reason why Plaintiffs' Team filed suit against Diamond:

> "**The IRS has been unhelpful (not surprised with the slow pace of government workers), so the ball is literally in your court.**"[5]

**Ex. 4** at *13 (emphasis added). At this point, Diamond had to involve outside trial counsel, who immediately advised Plaintiffs' Team of its involvement. **Ex. 4** at *12-13.

35. Castro responded to Diamond's counsel with an offer of indemnity, thus laying bare that Castro & Co.'s lawsuit was nothing more than an attempted "squeeze play" to make Diamond elect between conceding to unreasonable demands and spending untold amounts of money defending itself from frivolous litigation:

---

[5] *Id.* (emphasis added).

> "**We're willing to sign a Settlement Agreement indemnifying Diamond Offshore for issuing the Forms [*sic*] W-2C. We can have the case dismissed by Friday afternoon.**"

**Ex. 4** at *11-12 (emphasis added). In other words, within *hours* of filing a federal lawsuit alleging $100,000.00 in damages to *Castro & Co.*—and no damages to Rabe—Plaintiffs' Team offers to drop the suit, abandon its sworn damage claim, and fully indemnify Diamond. Castro's approach begs the question: Why would Diamond need indemnification—and why would Plaintiffs offer indemnification—*unless* issuing the forms in question would expose Diamond to additional liability?

36. After confirming the nature of Castro's involvement—Castro is not a licensed attorney—counsel for Diamond advised Plaintiffs' Team that, absent immediate dismissal of the individual Diamond employees *and* withholding service on Diamond, the only discussions between the parties would be the scheduling of oral hearings on Diamond's motion to dismiss and motion for sanctions. **Ex. 4**, at *7; *see also* **Ex. 6**, affidavit of Diamond's counsel. In response, Castro immediately agreed to drop the individual defendants ("Agreed, we'll dismiss the claims against Munoz and Rosenberg first thing tomorrow"). **Ex. 4** at *6.

37. Further, Castro, *sua sponte*, conceded that, despite a $100,000.00 damage claim sworn to in **ECF 1**, Plaintiffs were "not after any damages," and were only interested in Diamond issuing the amended Form W-2Cs:

"**We're not after any damages here. We simply want Diamond
Offshore to comply with established Treasury regulations.**"

**Ex. 4** at \*6 (emphasis added). Castro then began making *ad-hominem* attacks on
Diamond's counsel. *Id.* In response, counsel for Diamond advised Plaintiffs—verbally
and in writing—as to why the complaint was baseless and sanctionable. **Ex. 4** at \*3-4.

38. On or about March 22, 2018, Diamond was served with the original complaint.
Counsel for Diamond then advised Plaintiffs' Team that unless they dismissed the case
and paid Diamond's trial-counsel fees to-date—only $3,400.00 at the time—that
"Diamond will pursue dismissal, recovery of all associated fees, costs, and expenses in
defending this action, and all available sanctions against both you and your client."
**Ex. 4** at \*2.

39. In response, Castro concedes, again, that Rabe caused these problems, and then
Castro goes on to make a truly bizarre offer: Castro offers Diamond a power of attorney
over Rabe, so that *Diamond* "can call the IRS" *for Rabe.* **Ex. 4** at \*1. Having made this
offer, Castro then takes the position that if Diamond elects not to accept the power of
attorney and negotiate with the IRS, then Diamond is "recklessly disregarding the
facts." *Id.* Further, Castro goes on to state that this matter is for the IRS—not
Diamond—to decide, suggesting that Diamond is without basis to insist on proof of
tax residency from Rabe. *Id.* In closing, Castro states: "**Prepare the Forms W-2C [*sic*]
or we have nothing further to discuss.**" *Id.* (emphasis added).

40. Shortly thereafter, Diamond's tax lawyer made an inquiry to Plaintiffs' Team regarding whether they had tried resolving Rabe's issue using other means that don't require Diamond's involvement (*e.g.*, by following separate procedures permitted by law in order to obtain a refund of Rabe's employee-portion of FICA taxes). **Ex. 5** at *6. Castro did not respond, so Ms. Rossmiller followed up a week later. Castro responded:

> **"You all had your chance to cooperate with us. Weiner decided to burn the bridge with his lack of civility. We'll see you in court."**

**Ex. 5** at *5. Thereafter, counsel exchanged correspondence regarding Diamond's anticipated motion for sanctions. **Ex. 5** at *2-4. In response, Castro emailed Diamond's trial counsel (Mr. Weiner), copying Diamond's in-house counsel (Mr. Maddux) and plaintiff's counsel (Mr. Milam) with a succinct statement of his position:

> **"Motion for sanctions or shut the hell up. We're not dismissing the case."**

| | |
|---|---|
| **From:** | John Anthony Castro, J.D., LL.M. <j.castro@castroandco.com> |
| **Sent:** | Monday, April 02, 2018 6:42 PM |
| **To:** | Tony Weiner; Joshua Scott Milam, J.D., LL.M.; 'Rossmiller, Lisa'; Executive Office Manager, Alfonso Garza |
| **Cc:** | 'Maddux, Cortlan' |
| **Subject:** | RE: Castro & Co LLC - Additional Information (4/2/18) - FRCP 11 safe-harbor notification |

Motion for sanctions or shut the hell up.  We're not dismissing the case.

**Ex. 5** at *1. As of April 2, 2018, non-essential communications between the parties have broken down.

15

41. The facts above serve to establish that the basis for this frivolous litigation is not, in fact, that Diamond has done anything wrong. Rather, the facts above establish the lengths to which Plaintiffs' Team will go in order to try and strong-arm Diamond into capitulating to the unreasonable demand that Diamond risk tax liability and penalties because Plaintiffs can't or won't produce the documents required to achieve their goal.

42. As a result of this frivolous litigation, Diamond has, to-date, incurred at least $58,131.25 in attorney's fees and $850.16 in costs with its trial counsel. Additionally, Diamond has also expended significant fees and costs with respect to its outside tax counsel (Ms. Rossmiller of Norton Rose Fulbright). At this time, Diamond is not seeking to recover those fees and costs, but reserves the right to do so.

## C. Castro and his counsel appear to exhibit a pattern of sanctionable conduct.

43. Diamond is compelled to put the Court on notice of additional evidence supporting the conclusion that the conduct of Plaintiffs' Team is sanctionable.

44. In addition to the lawsuit that Plaintiffs filed against Diamond, it appears that Castro and his counsel, Mr. Milam, have been filing other frivolous lawsuits in the Northern District of Texas, including other lawsuits for which sanctions may issue. Specifically, Castro and/or Castro & Co. has filed at least 10 lawsuits filed in the Northern District of Texas, nine of which were filed between February 2018 and March 2018, and all of which were filed by Mr. Milam:

16

1) 8.21.17    *Castro & Co. v. **ADP***, 3:18-cv-695-O;

2) 2.6.18    *Castro & Co. v. **IRS**, et al.*, 3:18-cv-298-C;

3) 2.14.18    *Castro & Co. v. **Fidelity***, 3:18-cv-128-Y;

4) 2.26.18    *Castro v. **Campbell***, 3:18-cv-467-B;

5) **3.12.18**    *Castro v. **Berg**, et al., LLP*, 3:18-cv-573-N;

6) **3.12.18**    *Castro & Co. v. **Diamond** et al.*, 3:18-cv-574-M (**Lynn, C.J.**);

7) **3.12.18**    *Castro v. **Gudorf** and Gudorf Law Group*, 3:18-cv-575-K;

8) **3.19.18**    *Castro & Co. v. **Anonymize** Inc. et al.*, 3:18-cv-643-N;

9) **3.19.18**    *Castro v. **Georgetown** et al.*, 3:18-cv-00645-M (**Lynn, C.J.**)

10) **3.21.18**    *Castro & Co. v. **Polymath**, Inc.*, 3:18-cv-678-L.

45. Many of the lawsuits filed by Castro & Co. and/or Castro have a recurring theme: Castro allegedly taking actions that are highly questionable from both ethical and legal points of view, getting caught, and then Castro suing whomever caught him for defamation and other trumped-up claims. For example, in the *Campbell*, *Gudorf*, and *Berg* cases, noted above, Castro filed defamation claims (including a former client and a former employer) who allegedly discovered Castro's legal and ethical failings, and then warned others about working with Castro. The details of these cases are instructive.

46. In *Campbell*, Castro sued his own client for defamation. In Campbell's response and counterclaim, Mr. Campbell, *like Diamond*, seeks sanctions against Castro for what, if true, is nothing less than shocking levels of misconduct and unethical behavior:

- "When **Campbell discovered that Castro had filed fraudulent tax returns on his behalf** he shared the facts he had discovered with other colleagues who had also used Castro's services. **In response, Castro filed this baseless lawsuit to 'silence' Campbell and force him to incur legal fees to defend himself in an out of state court proceeding**." **ECF 12-4** at \*1 (emphasis added).

17

- "Upon information and belief, **Castro regularly engages in the practice of preparing and filing erroneous and fraudulent tax returns** as part of a business practice that targets and takes advantage of non-US citizens working in the United States." **ECF 12-4** at *2 (emphasis added).

- "**Castro's lawsuit is groundless and was brought in bad faith solely to harass and embarrass Campbell, to force him to incur unnecessary legal expense and to compel his silence allowing Castro to continue to take advantage of unwitting clients in furtherance of his fraudulent tax practice.**" **ECF 12-4** at *4-5 (emphasis added).

- **Castro made multiple false claims related to Mr. Campbell's tax filings; claims that Mr. Campbell never authorized or directed, including a litany of truly shocking false claims that had no basis in fact. ECF 12-4** at *7-8 (emphasis added).

- **After Campbell shared his own personal experience with others—with the express disclaimer that what he was sharing was "just my experience and may not apply to any or all of you"—Castro filed a lawsuit, threatened Campbell with sanctions, criminal charges, and jail, and then demanded a "permanent gag order for life." ECF 12-4** at *8-9 (emphasis added).

- **Castro even threatened Campbell's new tax accountant that if the accountant has any contact with anyone other than Campbell, that Castro will sue the accountant and go "after his personal assets." ECF 12-4** at *10 (emphasis added).

Castro's conduct in the *Campbell* case goes well beyond the allegations stated above. In fact, on April 13, 2018, the district court (Boyle, J.), on her own motion, transferred the *Campbell* case to Michigan because Castro's response to a show-cause order failed to establish a basis for venue in the Northern District of Texas. In short, it appears that Castro and Mr. Milam have no issues filing lawsuits without viable claims.

18

47. Two other lawsuits filed by Castro—*Gudorf* and *Berg*—similarly allege claims of defamation, stemming from actions taken by parties familiar with Castro who, for whatever reason, allege that Castro "was engaged in unethical or illegal activity."

48. In *Berg*, where Castro seeks defamation and tortious-interference damages of nearly $250 Million, based on what appears to be the conclusion that Castro, but for *Berg's* conduct, would have been hired by every Australian citizen with certain tax issues. The district judge (Godbey, J.) in *Berg* recused himself without explanation. **Ex. 5**. In *Gudorf*, like in *Campbell*, the district judge (Kinkeade, J.) also transferred the case to Ohio due to Castro's failure to establish a basis for venue in this district. **Ex. 6**.

49. Finally, the *Georgetown* case—filed in *this* Court—is particularly noteworthy. *Georgetown* relates to Georgetown University—Castro's alma mater—refusing to permit Castro & Co. to participate in Georgetown's on-campus recruiting program. Georgetown's basis for its exclusion of Castro & Co. stems from Castro's prior misrepresentations when Castro was a law student: Castro was targeted for expulsion due to serious misrepresentations regarding his work experience (which Castro successfully lobbied against; he was ultimately permitted to graduate). **Ex. 7** at 8 (*3).

50. Unhappy with Georgetown's decision, Castro, like in the Diamond case, sued not only the organization he believes wronged him and his company (Georgetown and Diamond, respectively), but also sued the individual employees involved, who were just doing their jobs (Nan Hunter and Emily Rosenberg/Jane Munoz, respectively).

19

51. And, similar to this case, Castro blames others for his own failings: In *Georgetown*, Castro alleges that racial discrimination—and not his own moral and ethical failings—are the "real" reason Georgetown excluded Castro & Co. from campus interviews.

52. Like Diamond, the *Georgetown* defendants filed a motion to dismiss. In that motion, it is noted that Castro's conduct was specifically investigated by his law school, ultimately concluding that "while some of the discrepancies…might have been careless errors, others appeared to be deliberate misrepresentations." **Ex. 7** at 6 (*1). Castro's misrepresentations included "claiming to be a cadet at the U.S. Military Academy at West Point, when in fact he had only briefly attended a prep school for students not yet academically qualified to attend West Point." *Id.* Further, Georgetown's motion alleges statutory bars to every cause of action alleged by Castro. *Id.* at *7.

53. Finally, it is noteworthy that **Castro and his counsel appear willing to take contradictory positions in order to force adverse parties to travel long distances to defend against Castro's frivolous suits**. Diamond notes for the Court that Castro alleges in some cases that Castro's office in the District of Columbia. In other cases, *e.g.*, the *Georgetown* case, Castro alleges his office is in Dallas, Texas.

54. First, all addresses listed for Castro & Co. are "virtual" offices where space is rented as needed on a daily basis—it does not appear that Castro has dedicated offices. Second, it is noteworthy that if Castro had claimed the District of Columbia as his office in the *Georgetown* case—currently before this Court—venue in the *Georgetown* case would have been in a venue far more convenient to the *Georgetown* defendants.

55. All of these cases, particularly when considered together, support Diamond's contention that Plaintiffs' Team takes a cavalier approach to the ethical practice of law, and that they are impermissibly attempting to weaponize the federal courts to settle scores, extract unwarranted concessions, and strong-arm and intimidate adverse parties.

## D. Conclusion

56. Plaintiffs' Team is using this case to harass Diamond and to try and force Diamond to either capitulate to Plaintiffs' demands or waste time and money defending a frivolous claim.

57. For these reasons, Diamond respectfully requests that the Court sanction Plaintiffs' Team, jointly and severally, in an amount to be determined by the Court[6], but bearing in mind both Diamond's actual out-of-pocket, litigation-specific costs, and the need for the requested sanctions to be sufficient to deter repetition of the sanctionable conduct. Fed. R. Civ. P. 11(c)(4).

---

[6] To the extent it is relevant to the Court's assessment of fees and costs, on March 27, 2018, Castro & Co. represented to the public that "Castro & Co. grossed $14m in 2017." **Ex. 9** at *1. It appears that Castro & Co. has since deleted the post from Facebook, however it still appears in a Google search for the phrase "Castro & Co. grossed $14m." *Id.* at *2.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON L.L.P.**

By:  *Anthony D. Weiner*
   Paul J. Dobrowski
   State Bar No. 05927100
   Federal No. 3208
   pjd@doblaw.com
   Anthony D. Weiner
   State Bar No. 24043984
   Federal No. 38618
   adw@doblaw.com
   4601 Washington Avenue, Suite 300
   Houston, Texas 77007
   (713)659-2900 (phone)
   (713)659-2908 (fax)
   **Attorneys for Diamond Offshore Services Limited**

---

## Certificate of Service

All parties received notice of this filing by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*Anthony D. Weiner*
Anthony D. Weiner