IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASTRO & CO., LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-574-M |
| | § | |
| DIAMOND OFFSHORE SERVICES | § | |
| LIMITED, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Diamond Offshore Services Limited ("Diamond") has filed a Motion for Rule 11 Sanctions, *see* Dkt. No. 27 (the "Second Rule 11 Motion"), seeking "an order sanctioning plaintiffs, Johann Rabe and Castro & Co., LLC (Plaintiffs), plaintiffs' counsel, Mr. Joshua S. Milam, and Castro & Co.'s principal, John A. Castro (Castro)" – whom Diamond collectively refers to as "Plaintiffs' Team" – under Federal Rule of Civil Procedure 11(b)(1)-(4) and 11(c)(1), *id.* at 1.

Diamond explains that "[t]he grounds for this motion are that Castro & Co., Rabe, Castro, and Mr. Milam have presented pleadings for an improper purpose, namely (1) harassment and the causing of unnecessary expense for defendant, (2) claims or other legal contentions not warranted by existing law or for establishing new law, (3) factual contentions that do not have and/or are unlikely to have evidentiary support," and Diamond "asks the Court to dismiss plaintiffs' complaint and to impose monetary sanctions on plaintiffs, plaintiffs' principal, and plaintiffs' counsel in an

-1-

amount to be determined by the Court to be just and equitable under the circumstances." *Id.* (footnotes omitted).

Chief Judge Barbara M. G. Lynn referred the Second Rule 11 Motion to the undersigned United States magistrate judge for a hearing, if necessary, and for recommendation or determination under 28 U.S.C. § 636(b). *See* Dkt. No. 29.

Plaintiffs Castro & Co., LLC and Johann Rabe (together, "Plaintiffs") filed a response, *see* Dkt. No. 30, and Diamond filed an untimely reply, *see* Dkt. No. 31; N.D. Tex. L. Civ. R. 7.1(e).

For the reasons explained below, the Court should deny Defendant Diamond Offshore Services Limited's Motion for Rule 11 Sanctions [Dkt. No. 27].

## Background

On March 12, 2018, Plaintiff Castro & Co., LLC ("Castro & Co.") filed its Original Complaint against Diamond Offshore Services Limited, Jane Munoz, and Emily Rosenburg, alleging causes of actions for Failure to Comply with 26 CFR 31.6051-1 and Tortious Interference with an Existing Contract. *See* Dkt. No. 1. Castro & Co., LLC sought "an award of attorney's fees, litigation costs, administrative costs, expenses, and any other permissible amount to the furthest extent legally permissible under Texas Law"; "an injunction, ordering Defendants to comply with federal law and issue the corrected form W-2s to Johann Rabe"; "actual compensatory damages in the amount of $100,000.00 for the Defendants' Tortious Interference with an Existing Contract"; and "judgement for such sums in addition to pre- and post-judgment interest, costs of court, and such other and any other relief to which he may be

entitled." *Id.* at 6; *see also id.* (praying that "Plaintiff recover a judgment against Diamond Offshore Services Limited, Jane Munoz, and Emily Rosenburg for all damages sought, including costs of court, prejudgment interest at the highest rate allowed by law, interest on the judgement at the highest legal rate from the date of judgment until collected, an injunction against Defendants ordering correction of the tax forms, and any other relief, in law and in equity, to which Plaintiff may be entitled").

On March 16, 2018, Plaintiff Castro & Co., LLC filed a Notice of Voluntary Dismissal that dismissed Defendants Jane Munoz and Emily Rosenburg. *See* Dkt. No. 4.

On April 25, 2018, Diamond filed a Motion to Expedite Defendant Diamond Offshore Services Limited's Motion for Rule 11 Sanctions. *See* Dkt. No. 12. It attached a draft Motion for Rule 11 Sanctions against Plaintiff Castro & Co., LLC, Plaintiffs' counsel Joshua S. Milam, and Castro & Co.'s principal John A. Castro that Diamond's counsel served by email on April 12, 2018. *See* Dkt. No. 12-1.

On April 27, 2018, Plaintiffs Castro & Co., LLC and Johann Rabe filed a First Amended Complaint against only Diamond, alleging causes of actions for Declaratory and Injunctive Relief, Tortious Interference with an Existing Contract, Violation of 26 U.S.C. § 7434, Failure to Comply with 26 CFR 31.6051-1, Common Law Fraud, and Constructive Fraud. *See* Dkt. No. 14. "Plaintiffs seek the recovery of: (a) all of their general, actual, special, and consequential damages, specifically including, without limitation, Mr. Rabe's lost wages and Castro's lost profits from its contract with Mr.

Rabe; (b) costs of court;(c) attorney's fees as provided by law; (d) pre- and post-judgment interest as allowed by law; and (e) punitive damages as may be determined by the finder of fact" as well as "(f) injunctive relief, in the form of an injunction ordering Defendant Diamond Offshore to issue corrected W-2 forms to Johann Rabe in compliance with federal law." *Id.* at 11-12; *see also id.* at 12 (praying that "Plaintiffs recover a judgment against Diamond Offshore Services Limited for all damages sought, including costs of court, prejudgment interest at the highest rate allowed by law, interest on the judgement at the highest legal rate from the date of judgment until collected, declaratory judgment that Mr. Rabe surrendered his legal permanent status, is a nonresident alien, and issue an order ordering Defendant to issue corrected W-2 forms for taxable years 2009-2017, injunction against Defendant ordering correction of the tax forms, and any other relief, in law and in equity, to which Plaintiffs may be entitled").

On May 3, 2018, the Court denied the Motion to Expedite Defendant Diamond Offshore Services Limited's Motion for Rule 11 Sanctions [Dkt. No. 12], explaining:

> Defendant apparently served its Motion for Rule 11 Sanctions on April 12, 2018, as required by Federal Rule of Civil Procedure 11(c)(2)'s safe-harbor provision. The Motion for Rule 11 Sanctions asserts that Plaintiff, its counsel, and its principal have presented Plaintiffs Original Complaint [1] "for an improper purpose, namely (1) harassment and the causing of unnecessary expense for defendant, (2) claims or other legal contentions not warranted by existing law or for establishing new law, and (3) factual contentions that do not have and/or are unlikely to have evidentiary support." Under Rule 11(c)(2), the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service" – here, May 3, 2018 – "or within another time the court sets." Defendant invokes limited authority for waiving Rule

-4-

11(c)(2)'s safe-harbor provision by conduct, citing *Browne v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 3:05-cv-2469-G, 2006 WL 3770505 (N.D. Tex. Dec. 14, 2006), and *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 307 (E.D. Va. 2004) (holding that the plaintiffs "knowingly waived any right to complain about loss of no more than approximately five hours of the twenty-one day period"). In *Browne*, the Rule 11 sanctions request failed because a motion was never served as Rule 11(c)(2) requires, and Judge Fish explained that, while the court does not question *Giganti's* conclusion that a party may waive the safe harbor provision, the court found the waiver argument unpersuasive. In this case, John Anthony Castro – in the course of the same email communications on which Defendant bases its waiver request – expressly disclaimed any waiver of the 21-day safe harbor, *see* Dkt. No. 12-3, and Plaintiff has now filed a First Amended Complaint [14] on April 27, 2018. Under all of these circumstances – without passing on whether the amended complaint may or may not withdraw or appropriately correct the matters that Defendant is asserting are sanctionable under Rule 11 – the Court determines that a finding of waiver by conduct is not warranted here.

Dkt. No. 16.

Diamond then filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* Dkt. No. 17, which is pending and as to which Judge Lynn has explained that "Plaintiffs' deadline to respond to this Motion elapsed over one month ago and Plaintiffs have waived their right to respond" and that "[t]he Court will decide the Motion without further briefing," Dkt. No. 26 at 1.

And, on May 24, 2018, Diamond filed its first Motion for Rule 11 Sanctions against Plaintiffs Johann Rabe and Castro & Co., LLC, Plaintiffs' counsel Joshua S. Milam, and Castro & Co.'s principal John A. Castro under Federal Rule of Civil Procedure 11(b)(1)-(4) and 11(c)(1). *See* Dkt. No. 21 (the "First Rule 11 Motion"). In support of the First Rule 11 Motion, Diamond contended that "[a]ll conditions

precedent to the filing of this motion have been satisfied," *id.* at 2, and, more specifically, that "[c]ounsel for defendant has discussed this motion with counsel for plaintiffs, including providing ECF 12 (Diamond's Motion to Expedite) and ECF 12-1 (Draft Motion for Sanctions - Exhibit 1 to Motion to Expedite) to counsel for plaintiffs more than 21 days prior to filing this motion, in conformance with Fed. R. Civ. P. 11(c)(2)," *id.* at 3. And Diamond contended that Plaintiffs Castro & Co. LLC and Johann Rabe, John Anthony Castro, and Plaintiffs' counsel Joshua Scott Milam "received notice of all pertinent aspects of this motion at least 21 days before filing this motion with the Court. ECF 12 & 12-1; Fed. R. Civ. P. 11(c)(2)." Dkt. No. 22 at 7.

Judge Lynn referred the First Rule 11 Motion to the undersigned, *see* Dkt. No. 23, and the undersigned recommended that the Court deny Diamond's First Rule 11 Motion without prejudice

> for failing to comply with Rule 11(c)(2).
>
> Rule 11(c)(2) required Diamond to serve all of the respondents with a copy of the filed motion at least twenty-one days in advance of its filing. *See Askins v. Hagopian*, 713 F. App'x 380, 381 (5th Cir. 2018) (citing *In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008)). The United States Court of Appeals for the Fifth Circuit has "'continually held that strict compliance with Rule 11 is mandatory.'" *Id.* at 380 (quoting *In re Pratt*, 524 F.3d at 588 & n.30). "The requirement that the actual motion be served was deliberately imposed ... to ensure that the moving party understands the seriousness of [the] motion and [that it] will define precisely the conduct claimed to violate the rule." *SortiumUSA, LLC v. Hunger*, No. 3:11-cv-1656-M, 2014 WL 1080765, at *4 (N.D. Tex. Mar. 18, 2014) (internal quotation marks omitted).
>
> The filed Motion for Rule 11 Sanctions [Dkt. No. 21] is not the same motion as the draft Motion for Rule 11 Sanctions against Plaintiff Castro & Co., LLC, Plaintiffs' counsel Joshua S. Milam, and Castro & Co.'s principal John A. Castro that Diamond's counsel served by email on April 12, 2018. *See* Dkt. No. 12-1. After Diamond served that draft Rule 11 sanctions motion [Dkt. No. 12-1] that was directed to Plaintiff Castro

& Co., LLC's Original Complaint [Dkt. No. 1] – but before Diamond filed its Motion for Rule 11 Sanctions [Dkt. No. 21] – Plaintiffs Castro & Co., LLC and Johann Rabe filed a First Amended Complaint [Dkt. No. 14].

That Diamond chooses to seek Rule 11 sanctions based on the amended complaint if it believes that the amended complaint did not withdraw or appropriately correct the matters that Diamond asserts are sanctionable under Rule 11 may be understandable, but it does not change the fact that the filed Motion for Rule 11 Sanctions [Dkt. No. 21] was not served on Plaintiffs Johann Rabe and Castro & Co., LLC, Plaintiffs' counsel Joshua S. Milam, and Castro & Co.'s principal John A. Castro at least 21 days before file as Rule 11(c)(2) requires.

Having served the draft Rule 11 sanctions motion [Dkt. No. 12-1] does not satisfy Rule 11(c)(2)'s requirements where, unlike the filed Motion for Rule 11 Sanctions [Dkt. No. 21], that draft motion (1) was directed to Plaintiff Castro & Co., LLC's Original Complaint [Dkt. No. 1], which raised fewer causes of action than First Amended Complaint [Dkt. No. 14], (2) did not seek sanctions against Plaintiff Johann Rabe, and (3) does not include an entire section of the brief in support of the filed Motion for Rule 11 Sanctions [Dkt. No. 21] that addresses other actions that Castro has filed, *see* Dkt. No. 22 at 16-21.

Under the governing case law, it is no answer on this record to allege that the respondents against whom Diamond seeks Rule 11 sanctions "received notice of all pertinent aspects of [the filed Motion for Rule 11 Sanctions] at least 21 days before filing this motion with the Court." Dkt. No. 22 at 7. As fully explained above, Rule 11(c)(2) requires strict, not "substantial," compliance and that includes that Diamond may only file, after the expiration of the safe-harbor period, the actual motion that was served on the respondents.

Dkt. No. 24 at 6-8. Judge Lynn accepted the Findings, Conclusions and Recommendation of the United States Magistrate Judge [Dkt. No. 24] and denied the First Rule 11 Motion [Dkt. No. 21] without prejudice. *See* Dkt. No. 25.

Nine days later, on July 20, 2018, Diamond filed the Second Rule 11 Motion, *see* Dkt. No. 27, and reported that "[t]his exact motion and its memorandum in support were served on Plaintiffs and Plaintiffs' counsel on June 28, 2018," *id.* at 2; *see also* Dkt. No. 28 at 7 ("Plaintiffs' Team received an exact copy of this motion at least 21

days before filing this motion with the Court. ECF 12 & 12-1; Fed. R. Civ. P. 11(c)(2)." (footnote omitted)); *id.* at 7 n.3 ("Plaintiffs' Team received an identical version of this memorandum on June 28, 2018. Further, Plaintiffs' Team also received a functionally identical version – but for slight variance in Paragraph 16 and the addition of this footnote – more than 21 days ago. *See* ECF 21, 22, and 24." (emphasis omitted)).

As background, Diamond explains in support of its Second Rule 11 Motion:

2. Castro & Co. sued Diamond because Diamond would not issue Corrected Wage and Tax Statements (IRS Form W-2Cs) to a non-U.S. citizen – Rabe – without all the documentation required by the IRS. ECF 1, 9, & 10. Plaintiffs recently amended their petition, adding Rabe as a plaintiff, and alleging fraud, tortious interference, and statutory violations. Plaintiffs seek damages and declaratory relief. ECF 14, 17, & 18.

3. Rabe has been a Diamond employee for over a decade. When Rabe was hired, he represented that he was a lawful permanent U.S. resident. Accordingly, Diamond classified Rabe as such for U.S. federal-tax purposes. As a withholding agent, Diamond also withheld from Rabe's compensation – and remitted to the IRS – Rabe's employee portion of federal-employment (i.e., FICA) taxes. Diamond also incurred and remitted to the IRS Diamond's employer portion of Rabe's FICA taxes.

4. In 2017, Diamond was contacted for the first time by Castro, who requested that Diamond issue Form W-2Cs – for the years 2009 through 2016 – in order to reflect Rabe's purported non-resident tax status. Castro represented to Diamond that Rabe relinquished his Green Card in 2008, and as a result became a non-resident for U.S. federal-tax purposes. Castro advised that Form W-2Cs were being requested from Diamond so that Rabe could use the forms to obtain a refund from the IRS of Rabe's employee portion of the FICA taxes remitted to the IRS by Diamond on Rabe's behalf.

5. For tax purposes, a lawful permanent resident generally continues to be classified as a U.S. tax resident until his status has been administratively or judicially determined to have been abandoned. 26 U.S.C. 7701(b)(1)(A); 26 U.S.C. 7701(b)(6); Treas. Reg. § 301.7701(b)-1(b)(1). To terminate U.S. tax residency by abandonment, a lawful permanent resident must submit either an Application for Abandonment (I-407) or both a letter stating his intent to abandon his residency status and an Alien Registration Receipt Card (Form I-151 or

I-551, as may be updated) with the U.S. Citizenship and Immigration Services (USCIS) or a consular officer. Treas. Reg. §301.7701(b)-1(b)(3).

6. Despite Diamond's multiple requests for documentation proving the termination of Rabe's tax residency, Plaintiffs' Team never provided documentation confirming that the (incomplete) Form I-407 provided to Diamond was accepted and processed by the USCIS or by a consular office. Without documentation establishing the termination of Rabe's tax residency, Diamond cannot verify Rabe's purported non-resident tax status, and cannot issue Form W-2Cs without being exposed to liability and/or penalties.

7. Plaintiffs' Team had opportunities to resolve this matter with the IRS, but failed to do so. Communications between the parties also make clear that Plaintiffs' Team is well aware that it has not produced documentation sufficient to justify Diamond's issuance of Form W-2Cs. Now, rather than provide the documentation required by law for Diamond to issue IRS Form W-2Cs, Plaintiffs' Team is trying to strong-arm Diamond into submission. Despite constant threats of federal litigation by Plaintiffs' Team, Diamond has continuously tried to work with Plaintiffs' Team for over a year, even hiring a tax lawyer – at Diamond's expense – to provide tax advice on this matter.

8. If Diamond were to issue IRS Form W-2Cs based on the materials provided, Diamond could be subject to a multitude of penalties. For example, 26 U.S.C. § 6721 imposes a penalty against any person for inclusion of incorrect information on an information return; and 26 U.S.C. § 6722 imposes a penalty against any person for inclusion of incorrect information on a payee statement. Furthermore, as Diamond is aware of the lack of substantiating documentation regarding Rabe's residency status, Diamond would likely not be able to assert a reasonable-cause defense to any penalties.

9. To be clear, if Plaintiffs would simply provide the required documentation, both Rabe and Diamond would be eligible to request a tax refund for their respective portions of the FICA taxes remitted to the IRS. In other words, Diamond has an affirmative incentive to issue Form W-2Cs – a tax refund of its own. But Diamond cannot amend the Form W-2Cs or request a refund without all the evidence that the IRS requires in order to amend Rabe's non-resident tax status without exposing Diamond to liability.

10. Furthermore, there appear to be procedures permitted by law that Plaintiffs' Team could undertake in order to obtain a refund of Rabe's portion of employment taxes without Diamond having to issue Form W-2Cs. Diamond has advised Plaintiffs' Team of this; it appears Plaintiffs have not elected to use those procedures.

Dkt. 28 at 1-4 (emphasis omitted).

Although Diamond's Second Rule 11 Motion itself cites Rule 11(b)(1)-(4) and seeks monetary sanctions and dismissal, *see* Dkt. No. 27 at 1, Diamond makes clear in its Memorandum in Support of Defendant Diamond Offshore Services Limited's Motion for Rule 11 Sanctions that it now seeks Rule 11(c)(1) sanctions based on a violation of only Rule 11(b)(1) and apparently does not seriously press for dismissal under Rule 11(c):

> 11. Plaintiffs' amended complaint alleges that Diamond failed to comply with the law by not issuing Form W-2Cs to Rabe. Plaintiffs further allege that, by not issuing the Form W-2Cs, Diamond is somehow committing fraud, tortious interference, and breach of a (non-existent) fiduciary duty. ECF 17 and 18. Plaintiffs seek unspecified damages and an injunction compelling Diamond to issue the Form W-2Cs. Plaintiffs' claims are without basis in law or fact, and are the subject of a motion to dismiss. *Id.*
> 12. Simply put, Plaintiffs are using litigation in this Court as a means to an end. Plaintiffs have been unsuccessful in resolving Rabe's dispute with the IRS, and are now trying to force Diamond to make a Hobson's choice: Either absorb significant costs defending itself from frivolous litigation or capitulate and agree to do Plaintiffs' bidding.
> 13. The approach taken by Plaintiffs' Team – i.e., make it impossible to justify the cost of the fight – is improper and sanctionable. Diamond moves for sanctions against Plaintiffs' Team in an amount to be determined by the Court, but bearing in mind Diamond's reasonable trial-attorney's fees expended to-date.
> ....
> 17. A court may impose sanctions on a party, an attorney, or a law firm for presenting a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – for an improper purpose, such as to harass or cause unnecessary delay or expense. Fed. R. Civ. P. 11(b)(1), (c)(1).
> 18. The filing of Plaintiffs' [sic] Original Complaint, ECF 1, and Plaintiff's [sic] First Amended Complaint, ECF 14, violate Rule 11(b). Put simply, Plaintiffs filed their complaints for an improper purpose: To harass Diamond, cause Diamond unnecessary expense, and use a lawsuit as a way to extract unwarranted concessions from Diamond.
> **1) Filing for an Improper Purpose – Fed. R. Civ. P. 11(b)(1)**

19. Plaintiffs' Team filed complaints for the improper purpose of harassing Diamond and needlessly increasing litigation costs. Fed. R. Civ. P. 11(b)(1); *Welk v. GMAC Mortg., LLC*, 720 F.3d 736, 738-39 (8th Cir. 2013); *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

20. Plaintiffs' Team is well aware that Diamond did nothing wrong and is simply following the law. The failures here are due to Plaintiffs' inability or unwillingness to provide the documents Diamond requires, as well as Plaintiffs' Team's inability or unwillingness to use IRS-permitted procedures to obtain a refund of Rabe's portion of FICA taxes without Diamond's involvement.

....

41. The facts above serve to establish that the basis for this frivolous litigation is not, in fact, that Diamond has done anything wrong. Rather, the facts above establish the lengths to which Plaintiffs' Team will go in order to try and strong-arm Diamond into capitulating to the unreasonable demand that Diamond risk tax liability and penalties because Plaintiffs can't or won't produce the documents required to achieve their goal.

42. As a result of this frivolous litigation, Diamond has, to-date, incurred at least $58,131.25 in attorney's fees and $850.16 in costs with its trial counsel. Additionally, Diamond has also expended significant fees and costs with respect to its outside tax counsel (Ms. Rossmiller of Norton Rose Fulbright). At this time, Diamond is not seeking to recover those fees and costs, but reserves the right to do so.

....

56. Plaintiffs' Team is using this case to harass Diamond and to try and force Diamond to either capitulate to Plaintiffs' demands or waste time and money defending a frivolous claim.

57. For these reasons, Diamond respectfully requests that the Court sanction Plaintiffs' Team, jointly and severally, in an amount to be determined by the Court, but bearing in mind both Diamond's actual out-of-pocket, litigation-specific costs, and the need for the requested sanctions to be sufficient to deter repetition of the sanctionable conduct. Fed. R. Civ. P. 11(c)(4).

Dkt. 28 at 4-5, 7-8, 16, 21 (footnotes omitted); *see also id.* at 9 n.4 ("Diamond's motion to dismiss Plaintiffs' amended complaint has been filed and is currently pending. ECF 17, 18.").

Diamond also explains that it "is compelled to put the Court on notice of

-11-

additional evidence supporting the conclusion that the conduct of Plaintiffs' Team is sanctionable"; that, "[i]n addition to the lawsuit that Plaintiffs filed against Diamond, it appears that Castro and his counsel, Mr. Milam, have been filing other frivolous lawsuits in the Northern District of Texas, including other lawsuits for which sanctions may issue"; that, "[s]pecifically, Castro and/or Castro & Co. has filed at least 10 lawsuits filed in the Northern District of Texas, nine of which were filed between February 2018 and March 2018, and all of which were filed by Mr. Milam"; and that "[a]ll of these cases, particularly when considered together, support Diamond's contention that Plaintiffs' Team takes a cavalier approach to the ethical practice of law, and that they are impermissibly attempting to weaponize the federal courts to settle scores, extract unwarranted concessions, and strong-arm and intimidate adverse parties." *Id.* at 16, 21.

Plaintiffs respond that they

initiated the action underlying Defendant's [Second Rule 11 Motion] to redress Defendant's wrongful tax withholdings and wrongful W-2 reporting related to Mr. Rabe's wages based upon Mr. Rabe's immigration status and Defendant's subsequent refusal to issue corrected W-2 forms. Retained by Mr. Rabe to coordinate the correction of the Form W-2s and ensure compliance with U.S. tax laws, Castro & Co. diligently attempted to work with Defendant to get Defendant to issue corrected Form W-2s. Despite providing substantial evidence of Mr. Rabe's lawful renunciation of his U.S. legal permanent resident status, Defendant refused to issue the corrected forms. As a result, Castro & Co. has been precluded from performing its contractual obligations owed to Mr. Rabe and collecting the expected revenue under the contract.

Defendant seeks sanctions against Plaintiffs Castro & Co., Mr. Rabe, Plaintiffs' counsel, and John Anthony Castro on the bases that Plaintiffs have filed their complaint for the purpose of (1) harassing Defendant, and (2) needlessly increasing litigation costs violating Fed. R. Civ. P. 11(b)(1).

-12-

Notwithstanding the fact that John Anthony Castro, individually, is not a party to this lawsuit, Defendant's motion exceptionally fails to demonstrate that Plaintiffs' lawsuit was filed for an improper purpose in violation of Fed. R. Civ. P. 11(b)(1). Indeed, Defendant's motion is an attack on the merits of Plaintiffs' case at best or a reprehensible attempt to defame and disparage John Anthony Castro by Defendant's counsel at worst.

....

Defendant's motion, in the guise of a motion for sanctions for violation of Rule 11(b)(1), is in fact an attack on the merits of Plaintiffs' case and thus not a valid claim for Rule 11 Sanctions. When not challenging the merits of Plaintiffs' case with conclusory statements and conclusions of law, Defendant's motion unabashedly disparages and defames a non-party, namely, John Anthony Castro.

Moreover, the filings on record clearly do not indicate that Plaintiffs' pleadings were interposed for an improper purpose such as harassment and needlessly increasing litigation costs as Defendant's conclusory allegations suggest. Plaintiffs' pleadings make colorable claims warranted by existing law with sufficient evidentiary support.

....

Defendant's motion provides Defendant's version of events full of conclusory statements and conclusions of law that specify Plaintiffs' own acts and/or omissions as the reason Defendant refuses to issue corrected W-2 forms, that Defendant has done nothing wrong, and that Defendant's position that it requires specific documents are the sole means to addressing the grievances alleged in this lawsuit. The motion is void of any facts substantiating Defendant's claim that Plaintiffs filed this suit to harass Defendant or to needlessly increase litigation costs. Rather, Defendant's motion is an indirect attack on the merits of Plaintiffs' case, not a valid claim for Rule 11 sanctions.

Dkt. 30 at 1-2, 5, 9. Plaintiffs contend that "a reasonable attorney would believe, after reasonable inquiry under the circumstances, that the claims and legal contentions to the theories of liability alleged in Plaintiffs' pleadings against Defendant were warranted by existing law, considering the known facts," and that "Plaintiffs have presented colorable claims for redress and Defendant's motion fails to demonstrate that Plaintiffs filed this lawsuit for the purpose of harassing Defendant or causing

unnecessary litigation expenses." *Id.* at 13. "Plaintiffs respectfully request the Court

deny [Defendant's Second Rule 11 Motion] and award Plaintiffs' their attorney's fees

in responding to Defendant's meritless motion" under Federal Rule of Civil Procedure

11(c)(2). *Id.* at 14.

> Diamond replies that
>
> [t]he response filed on behalf of [Castro & Co. LLC, Mr. John Anthony
> Castro, Mr. Johann Rabe, and Mr. Joshua Scott Milam (collectively,
> "Plaintiffs' Team" or "Castro")] is riddled with misrepresentations which
> only serve to highlight both the sanctionable nature of Castro's actions
> and the character of Mr. John Anthony Castro. Further, the response
> fails to include any affidavits or reliable evidence of any kind.
> ....
> 14. Castro is using this Court to harass Diamond and to try and force
> Diamond to either capitulate to Castro's demands or waste resources
> defending frivolous claims. In response to Diamond's [Second Rule 11
> Motion], Castro filed a response with this Court that is replete with
> misrepresentations and devoid of reliable evidence. In short, the tale told
> by Castro's response is filled with sound and fury, signifying nothing.

Dkt. 31 at 1, 5 (footnote omitted). "Diamond respectfully requests that the Court

sanction Plaintiffs' Team, jointly and severally, in an amount to be determined by the

Court in its discretion." *Id.* at 5.

### Legal Standards

Federal Rule of Civil Procedure 11 authorizes a court to impose sanctions on a

party or attorney who files a pleading for an improper purpose, such as to harass the

opposing party, delay the proceedings, or increase the expense of litigation. *See* FED.

R. CIV. P. 11(b), (c). Under Rules 11(a) and 11(b),

> [e]very pleading, written motion, and other paper must be signed by at
> least one attorney of record in the attorney's name – or by a party
> personally if the party is unrepresented. ....

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(a), (b).

An attorney has a duty to conduct a "reasonable inquiry into the facts and law of a case at the time [at] which she affixes her signature on any papers to the court." *S.E.C. v. Faulkner*, No. 3:16-cv-1735-D, 2018 WL 3708426, at *2 (N.D. Tex. Aug. 3, 2018) (quoting *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001)). "In determining whether an attorney has made a reasonable inquiry, the court may consider: 'the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the pro se status of the litigant; and the complexity of the legal and factual issues raised.'" *Id.* (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875-76 (5th Cir. 1988) (en banc)). "An attorney who files court papers with no basis in fact needs no more notice of her Rule 11 violation than the existence of Rule 11 itself." *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996). "The signing attorney has a duty of reasonable inquiry, but his

-15-

signature is not a guarantee of the correctness of the legal theories argued, nor is it a guarantee of all alleged facts, especially if the matter is not easily discovered by extrinsic evidence." *Health Net, Inc. v. Wooley*, 534 F.3d 487, 497 (5th Cir. 2008) (citations omitted).

Sanctions under Rule 11 therefore may be appropriate if the Court finds that a document has been presented for an improper purpose, *see* FED. R. CIV. P. 11(b)(1); the claims or defenses of the signer are not supported by existing law or by a good-faith argument for an extension or change in existing law, *see* FED. R. CIV. P. 11(b)(2); or the allegations and other factual statements lack evidentiary support or are unlikely to do so after a reasonable opportunity for investigation, *see* FED. R. CIV. P. 11(b)(3).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), and "'to spare innocent parties and overburdened courts from the filing of frivolous lawsuits,'" *Cappa Fund III, L.L.C. v. Actherm Holding, A.S.*, No. 3:10-cv-897-L, 2011 WL 817384, at *2 (N.D. Tex. Feb. 21, 2011) (quoting *Kurkowski v. Volcker,* 819 F.2d 201, 204 (8th Cir. 1987)), *rec. adopted*, 2011 WL 816861 (N.D. Tex. Mar. 9, 2011).

As the Court has previously explained,

[u]nder Rule 11, a motion for sanctions may not be filed until at least 21 days after service of the motion on the offending party. *See* FED. R. CIV. P. 11(c)(2). If, during this period, the alleged violation is withdrawn or appropriately corrected, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it

refuses to remedy the improper paper, claim, defense, contention, or denial. *See id.*; *see also Elliott v. Tilton*, 64 F.2d 213, 216 (5th Cir. 1995). The safe-harbor provision is strictly construed, and substantial compliance and informal notice and opportunity to withdraw are not sufficient. *See Reyes v. Kroger Texas, LP.* No. 3:10-cv-922-B, 2010 WL 4316084, at *4 (N.D. Tex. Oct. 2, 2010) (citing *In re Pratt*, 524 F.3d 580, 586-88 (5th Cir. 2008)), *rec. adopted*, 2010 WL 4321585 (N.D. Tex. Oct. 25, 2010). A Rule 11 motion for sanctions is properly denied when the movant fails to comply with the safe-harbor provision. *See Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000). The movant has the burden to show compliance. *See Reyes*, 2010 WL 4316084, at *4 (citing *Harris v. Auxilium Pharms., Inc.*, 664 F. Supp. 2d 711, 724 (S.D. Tex. 2009)).

....

Rule 11(c)(2) provides: "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." FED. R. CIV. P. 11(c)(2). Rule 11's plain language provides that the movant must file with Court, after the expiration of the safe-harbor period, the motion that was served upon the adversary. *See Hyman v. Borack & Assocs.*, No. 8:12-cv-1088-T-23TGW, 2012 WL 6778491, at *2 (M.D. Fla. Dec. 17, 2012), *rec. adopted*, 2013 WL 68534 (M.D. Fla. Jan. 4, 2013); *see also Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006) ("[t]he plain language ... requires a copy of the actual motion for sanctions to be served on the persons(s) accused of sanctionable behavior at least twenty-one days prior to the filing of that motion").

*OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 498, 500 (N.D. Tex. 2016).

As to the merits of a Rule 11(c)(1) motion that complies with Rule 11(c)(2)'s safe-harbor provision, the United States Court of Appeals for the Fifth Circuit has explained that

Subsections (b)(1) and (b)(2) provide independent grounds for sanctions, either because a filing is made for an improper purpose regardless of its merits or because a filing, even made in good faith, is legally indefensible. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (en banc). .... An attorney's conduct is judged under each standard with an objective, not a subjective, standard of reasonableness. *Whitehead*, 332 F.3d at 802. "Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the

> document." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444
> (5th Cir. 1992).

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016). The

"'snapshot' rule ensures that Rule 11 liability is assessed only for a violation existing

at the moment of filing." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir.

2006). "[T]he imposition or denial of sanctions of necessity involves a fact-intensive

inquiry into the circumstances surrounding the activity alleged to be a violation of Rule

11." *Snow Ingredients*, 833 F.3d at 527-28 (internal quotation marks omitted).

As to Rule 11(b)(1) specifically, "Rule 11(b)(1) prohibits an attorney from filing

a federal action for any improper purpose, i.e., to harass, cause unnecessary delay, or

needlessly increase the cost of litigation." *Faulkner*, 2018 WL 3708426, at *3. As the

Fifth Circuit has explained,

> [o]nce a limited bar to unsigned pleadings and rarely used by parties,
> Rule 11 gained bite in an expanded version, requiring that a party, when
> signing a pleading or any other paper before the court, certify four specific
> representations: that the party is not filing the paper "for any improper
> purpose, such as to harass or to cause unnecessary delay or needless
> increase in the cost of litigation"; its claims or defenses are plausible
> under existing or potential future law; the allegations are supported by
> evidence or likely to be supported with further investigation; and that
> any denials of allegations are so supported. A violation of any one of
> these, including filing for an improper purpose, can merit sanctions.
> Under the current version, courts may in rare circumstances sanction
> parties for pleadings like those here that, although having plausible legal
> theories based in fact, have an underlying improper purpose. The Rule
> was amended "precisely because the subjective bad-faith standard was
> difficult to establish and courts were therefore reluctant to invoke it as
> a means of imposing sanctions." As Judge Schwarzer explains in his
> paper describing the broader version of Rule 11 that emerged in 1983:
>
>> [T]he rule reaches [those pleadings] which, although not without
>> merit, constitute an abuse of legal purpose because brought for an
>> improper purpose such as causing harassment, unnecessary delay

> or needless increase in the cost of litigation. As the Advisory Committee Notes state, the rule "should discourage dilatory or abusive tactics and help ... streamline the litigation process."

We have similarly verified that "[e]ach obligation [of Rule 11] must be satisfied; violation of either justifies sanctions," and "Subparts (b)(1) and (2) of Rule 11 provide independent bases for sanctions."

....

> The court's discretion to impose sanctions for an improper purpose under Rule 11 and its inherent power is bounded. "[G]enerally, district courts do not sanction attorneys who make nonfrivolous representations .... [They] may do so, however, where it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose." Furthermore, "[a]lthough a district court is not to read an ulterior motive into a document 'well grounded in fact and law', it may do so in exceptional cases ... where the improper purpose is objectively ascertainable." "[I]n determining compliance vel non with each obligation [of Rule 11], 'the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances.'" Our emphasis on an objective inquiry has been emphatic; we have expressly rejected any subjective inquiries into the motivation behind a filing, explaining,

> > The history of the Rule ... indicates that "subjective bad faith" is no longer an element in Rule 11 inquiries. Instead, the court must focus on objectively ascertainable circumstances that support an inference that a filing harassed the defendant or caused unnecessary delay .... [P]urely subjective elements should not be reintroduced into the determination concerning "improper purpose."

> Doubtless many plaintiffs have multiple purposes in pursuing litigation. And so long as the merits of their claim, viewed objectively, are supported by a good-faith belief that the allegations are well founded and not frivolous, the subjective motivation for pursuing the claim and the multiple purposes are ordinarily of no moment.

*F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 577, 580-81 (5th Cir. 2008) (footnotes omitted).

"An 'improper' purpose connotes a purpose defying a normative standard." *Id.* at 581. And "Rule 11's list of improper purposes is only illustrative; 'to harass' is but one of the possible improper purposes." *Whitehead*, 332 F.3d at 807. "Consequently, where it is objectively ascertainable that an attorney has submitted a paper to the

court for an improper purpose, sanctions may be imposed." *Faulkner*, 2018 WL 3708426, at *3; *see also Maxxam*, 523 F.3d at 581 n.79 ("We recognize the difficulty in identifying an 'improper purpose' objectively, as an 'improper purpose' connotes intent. However, we have consistently emphasized that we must follow an objective inquiry."). But, "[a]bsent improper purpose, therefore, a rule 11 violation must be predicated on the certification of some legal or factual claim." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998).

"In finding a Rule 11(b)(1) violation, courts ... typically deem a party's purpose to be improper as a result of repeated filings or where evidence indicates an ulterior motive beyond the stated purpose of the filing." *Faulkner*, 2018 WL 3708426, at *3. As the Fifth Circuit has explained, "filing excessive motions could constitute harassment proscribed by Rule 11, even if the motions were well-founded in law or fact," and "[f]iling otherwise legitimate documents that use abusive language toward opposing counsel could also violate the rule, as could filing a valid pleading or motion without a sincere intent to pursue it," *Whitehead*, 332 F.3d at 805 (citations omitted).

> In, *Whitehead*, for example, the sanctioned attorney attempted to execute a judgment against Kmart "by seizing currency in the cash registers and vault," with "media representatives and two United States Marshals" in tow. *Id.* at 800.
> "In ascertaining [an improper] purpose, we implied that the sanctioned party would not have acted as he did in the absence of the improper purpose." *Maxxam*, 523 F.3d at 585[.]

*Kenyon Int'l Emergency Servs., Inc. v. Malcolm*, No. 12-20306, 2013 WL 2489928, at *6 (5th Cir. May 14, 2013) (footnote omitted). And, in *Mercury Air Group, Inc. v. Mansour*, the Fifth Circuit held that, where, "despite [the plaintiff's] investigation, had [the

-20-

plaintiff's] counsel paid sufficient attention to [the plaintiff's CEO and chairman's] statements in [a] deposition, [the plaintiff] would have determined that there is no basis for this suit" and that the plaintiff's "counsel's decision to pursue the lawsuit, despite [the CEO and chairman's] testimony that it was inherently baseless, indicates that the trial court did not abuse its discretion when it awarded [the defendant] its reasonable attorneys' fees and expenses under Rule 11 because of an improper purpose." 237 F.3d at 548-59. And another judge in this district recently recounted, by way of example, that,

> in *Jordaan v. Hall*, 275 F. Supp. 2d 778 (N.D. Tex. 2003) (Fish, C.J.), Chief Judge Fish found that the plaintiff had filed her complaint intending to disrupt related state proceedings and force the recusal of the state court judge. He concluded that "[t]he timing, length, and content of this recusal motion indicate that the original complaint was filed in order to force [the state court judge's] recusal on the basis of a carefully crafted conflict of interest." *Id.* at 786; *see also Deutsch v. Henry*, 2016 WL 7165993, at *17 (W.D. Tex. Dec. 7, 2016), *aff'd*, 2017 WL 5652384 (W.D. Tex. Mar. 28, 2017), *and aff'd sub nom. Deutsch v. Phil's Icehouse, Inc.*, 716 Fed. Appx. 361 (5th Cir. 2018) (finding that attorney harassed opposing counsel by repeating 29 false statements in 113 separate filings over course of 6 cases).

*Faulkner*, 2018 WL 3708426, at *3; *see also Bruno v. Starr*, 247 F. App'x 509, 511 (5th Cir. 2007) (explaining that "Bruno was sanctioned for filing this lawsuit for the improper purpose of harassment" under Rule 11(b)(1), where "[h]e continued to file lawsuits on which he was denied relief – five in total – arising from the same claim," and that, on appeal, "[h]e overlooks the plain language of rule 11, which states that sanctions can be levied against parties for, inter alia, filing suits for the improper purpose of harassment" (citing FED. R. CIV. P. 11(b)(1))).

But the Fifth Circuit has explained that a Rule 11(b)(1) analysis does not involve "a balancing inquiry into the relative strength of improper and proper motivations behind the filing of a suit" and that, rather, some of the "questions [to be answered] are whether 1) the suit at the outset would have been pursued *sine qua non*, and 2) whether the methods and manner of prosecuting the claim after the initial filing was to impose unnecessary costs of defense" on a defendant. *Maxxam*, 523 F.3d at 583-84. "Where an improper purpose was not necessarily the 'but for' cause of a party's decision to file, the Supreme Court has upheld sanctions for a party's bad faith manner of pursuing the case," and, "[i]n asking whether a party pursued an illegitimate purpose to increase costs or to harass a party – regardless of the weight of that purpose in filing suit – [the Fifth Circuit has] determined that [the court] must identify 'unusual circumstances' that show such purposes" and, "[i]n so doing, ... look to 'objectively ascertainable circumstances rather than subjective intent,' one example of which is excessive filing." *Id.* at 585 (footnotes and internal quotation marks omitted).

Under Rules 11(b)(2) and 11(c), "Rule 11 permits sanctions against a party that signs a pleading that is not warranted by existing law or a good faith argument for its extension, modification, or reversal or the creation of new law." *Health Net*, 534 F.3d at 497 (citing FED. R. CIV. P. 11(b)(2), 11(c)). Under Rule 11(b)(2), "[s]anctions are appropriate if counsel submits a 'legally indefensible' filing," and "[a] filing is legally indefensible if it is not 'warranted by existing law or by a nonfrivolous argument.'" *M2 Techn., Inc. v. M2 Software, Inc.*, ___ F. App'x ___, No. 17-40476, 2018 WL 4191098, at *1 (5th Cir. Aug. 31, 2018) (quoting *Snow Ingredients*, 833 F.3d at 528 (citing FED. R.

CIV. P. 11(b)(2))). But "a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where ... the law is arguably unclear." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993).

And Rules 11(b)(3) and 11(c) "permits sanctions where the factual allegations are unsupported or are not likely to be supported after a reasonable opportunity for further discovery." *Health Net*, 534 F.3d at 497. But "the standard certification for factual allegations under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention." *Bynum v. Am. Airlines, Inc.*, 166 F. App'x 730, 734 (5th Cir. 2006).

Further, as this Court has previously explained, a Rule 11 motion that makes only "essentially summary judgment arguments about the legal and factual sufficiency of the complaint" is "not a proper invocation of the Court' discretion to impose the extraordinary remedy of sanctions for the 'rare and exceptional case where the action is *clearly* frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.' *Laughlin*, 1997 WL 135676, at *8 (emphasis in original)," and,

> [i]n determining whether Rule 11 sanctions should be imposed, the Court does not judge the merits of the action but rather, determines whether an attorney has abused the judicial process. *See Cooter & Gell*, 496 U.S. at 396. Rule 11 should not be used to test the legal or factual sufficiency of a party's claims. The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions ... should not be employed ... to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." FED. R. CIV. P. 11 advisory committee's note (1993 Amendments); *see also Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 416-17 (S.D.N.Y. 2003). In essence, "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary judgment." 5A CHARLES ALAN WRIGHT & ARTHUR R.

MILLER, FEDERAL PRACTICE AND PROCEDURE § 1336 (2d ed. Supp. 2003); *see also Blue v. United States Dep't of the Army*, 914 F.2d 525, 535 (4th Cir. 1990) ("[C]laims that are plainly meritless should be disposed of early in the course of litigation through summary judgment or other pretrial motion[s].... As a general matter, dismissal of a frivolous ... case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort."). A Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment.

  The distinct approaches that courts employ in disposing of Rule 11 and summary judgment motions underscore the meaningful differences between the purposes and standards associated with Rule 11, a rare and extraordinary remedy that governs the imposition of certain types of sanctions, and Rule 56, which governs motions for summary judgment. *See Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 960-961 (6th Cir. 1990). At the very least, it is well settled that a claim that has "some plausible basis, [even] a weak one," is sufficient to avoid sanctions under Rule 11. *United Nat. Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001). That is true even where the evidence is weak and could not survive summary judgment. *See Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) (reversing grant of Rule 11 sanctions where, although evidence was "weak" and could not survive summary judgment, court could not "say that the complaint [was] so lacking in plausibility as to ... subject [the attorney] to" sanctions). Rule 11, again, is meant to deter significant abuses of the judicial process by an attorney, not weed out his or her weak legal and factual arguments.

*SortiumUSA, LLC v. Hunger*, No. 3:11-cv-1656-M, 2014 WL 1080765, at *5-*6 (N.D. Tex. Mar. 18, 2014); *accord Margetis v. Furgeson*, No. 4:12-cv-753, 2015 WL 6688063, at *8 (E.D. Tex. Sept. 29, 2015) ("The failure of Plaintiffs to state a plausible claim for relief in their Original Complaint under Rule 12(b)(6) is not by itself sufficient to warrant the imposition of sanctions." (footnote omitted; citing *Tahfs v. Proctor*, 316 F.3d 584, 595 (6th Cir. 2003) ("A complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6).")); *Protective Life Ins. Co. v. Dignity Viatical Settlement Ptrs., L.P.*, 171 F.3d 52, 58 (1st Cir. 1999) ("The mere fact

that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions.")), *aff'd*, 666 F. App'x 328 (5th Cir. 2016); *Mark's Airboats, Inc. v. Thibodaux*, Civ. A. No. 6:13-0274. 2015 WL 1467097, at *4 (W.D. La. Mar. 27, 2015) ("The allegations in defendants' Rule 11 motions include documents outside the record and are essentially summary judgment arguments about the legal and factual sufficiency of the complaints. The Court agrees that the motions for sanctions are not the appropriate vehicle for the Court to find that a facially valid claim is without factual or legal support.").

Fifth Circuit "precedent does not allow the imposition of Rule 11 sanctions merely for the eventual failure of a claim; rather, sanctions are to be applied only where, at the time of the filing, the position advocated is unwarranted." *Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997); *see also Maxxam*, 523 F.3d at 585 ("Rule 11, therefore does not permit the imposition of sanctions simply for bringing a meritless lawsuit." (internal quotation marks omitted)). The Court of Appeals has affirmed denial of Rule 11 sanctions where, although a plaintiff's "claims ultimately fail, its claims are not so obviously foreclosed by precedent as to make them legally indefensible"; "[t]he filings do not indicate that [the plaintiff] neglected its 'duty of reasonable inquiry into the relevant law[,]' *CJC Holdings*, 989 F.2d at 793"; and "[t]he district court was correct to be cautious regarding the imposition of sanctions: 'misapplication of Rule 11 can chill counsel's 'enthusiasm and stifle the creativity of litigants in pursing novel factual or legal theories,' contrary to the intent of its framers,' *Id.* at 794 (quoting *Thomas*, 836 F.2d at 885)." *Snow Ingredients*, 833 F.3d at

-25-

529.

On a Rule 11 motion for sanctions, "'due process demands only that the sanctioned party be afforded notice and an opportunity to be heard,'" and, "'[i]n Rule 11 cases, the opportunity to respond through written submissions usually constitutes sufficient opportunity to be heard' without requiring 'an actual hearing.'" *Meyers v. Textron Financial Corp.*, 609 F. App'x 775, 778 (5th Cir. 2015) (quoting *Merriman*, 100 F.3d at 1191-92).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." FED. R. CIV. P. 11(c)(1). And Rule 11(c)(4) provides that

> [a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). District courts are given considerable discretion in determining the appropriate sanction to impose on a party that violates Rule 11. *See Thomas*, 836 F.2d at 876-77. "District courts may choose to deter individuals who violate Rule 11 with monetary sanctions. One benefit of monetary sanctions is that they may be imposed exclusively against the attorney, thereby avoiding punishment of the client for attorney misconduct." *Id.* at 877. Nevertheless, while monetary sanctions may be appropriate under Rule 11, this court stated that the "basic principle governing the choice of sanctions is that the least severe sanction adequate to serve the purpose [of Rule 11] should be imposed."

*Id.* at 877-78. Thus, "as a less severe alternative to monetary sanctions, district courts may choose to admonish or reprimand attorneys who violate Rule 11." *Id.* at 878.

*Worrell v. Houston CanA Academy*, 287 F. App'x 320, 326 (5th Cir. 2008). As the en banc Fifth Circuit has further explained, "Rule 11 requires the imposition of sanctions once a violation has been found," but

the district court is vested with considerable discretion in determining the "appropriate" sanction to impose upon the violating party. Rule 11 explicitly authorizes such discretion in the district court by containing the word "appropriate" in the language of the rule. While attorneys' fees and reasonable expenses are expressly provided for by the rule as appropriate sanctions, the court possesses the discretion to tailor sanctions to the particular facts of the case. Fed. R. Civ. P. 11 advisory committee notes.
....
The broad discretion afforded district courts is reflected in the numerous types of sanctions that may be imposed under Rule 11. As attorneys' fees and reasonable costs are expressly provided for by Rule 11, we recognize the natural tendency of district courts to gravitate toward imposing these types of sanctions. However, we would caution that

[w]hether sanctions are viewed as a form of cost-shifting, compensating opposing parties injured by the vexatious or frivolous litigation forbidden by Rule 11, or as a form of punishment imposed on those who violate the rule, the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule.

Sanctions should also be educational and rehabilitative in character and, as such, tailored to the particular wrong. To serve these multiple purposes behind Rule 11, the district court should carefully choose sanctions that foster the appropriate purpose of the rule, depending upon the parties, the violation, and the nature of the case.
....
In sum, a district court must impose sanctions once a violation of Rule 11 is found, but the district court retains broad discretion in determining the "appropriate" sanction under the rule. What is "appropriate" may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances. Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe

sanction adequate to such purpose.

*Thomas*, 836 F.2d at 876-78 (citation and emphasis omitted). An appropriate sanction can be "even dismissal," but courts always "have a duty to impose the least severe sanction that is sufficient to deter future conduct." *OrchestrateHR*, 178 F. Supp. 3d at 498; *accord Thomas*, 836 F.2d at 878 ("While district courts may theoretically still dismiss baseless claims or defenses as sanctions, such a dismissal is now better grounded, not on misconduct, but on the merits under Rules 12, 41, 55, and 56. Also, Rules 16 and 26 provide a more solid basis for taking such action in response to abusive practices by litigants." (internal quotation marks and citation omitted)). And the Fifth Circuit "has affirmed a district court's determination that the least severe sanction for a lawsuit that is wholly frivolous is the imposition of reasonable attorneys' fees and expenses." *Brunig v. Clark*, 560 F.3d 292, 298 n.22 (5th Cir. 2009) (quoting *Mercury*, 237 F.3d at 548 (citing *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994))).

"The least severe sanction adequate requirement serves a critical function: it ensures that Rule 11 does not degenerate into nothing more than a docket control device that the district courts use to punish unsuccessful litigants who dare to raise their claims or defenses in federal court." *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992). Federal Rule of Civil Procedure 11(c)(5) imposes the additional limitations that "[t]he court must not impose a monetary sanction: (A) against a represented party for violating Rule 11(b)(2); or (B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned," FED. R. CIV. P.

11(c)(5), and, Federal Rule of Civil Procedure 11(c)(6) dictates that "[a]n order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction," FED. R. CIV. P. 11(c)(6).

A Rule 11(c)(1) motion for sanctions also carries with it the potential for fee-shifting on the sanctions motion itself, as another judge in this circuit has recently explained:

> Owing partly to the risk of misuse, Rule 11(c)(2) permits the award of expenses to the party prevailing on the sanctions motion: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). As the Advisory Committee explains, this prevailing-party expenses award will sometimes replace a cross-motion for sanctions:
>
> > As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11 – whether the movant or the target of the motion – reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.
>
> Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.
>
> Importantly, the expenses available under Rule 11(c)(2) are not meant only to sanction parties responsible for abusive Rule 11 motions. If the non-movant prevails, there is no requirement in the rule's text or commentary that the movant's conduct be found worthy of sanction. It is also possible for a prevailing movant to get expenses in addition to whichever "appropriate sanction" the court chooses. These features of the rule indicate that Rule 11(c)(2) expenses are not necessarily in the nature of a sanction.

*Adhikari v. Daoud & Ptrs.*, No. 4:09-cv-1237, 2017 WL 5904782, at *3 (S.D. Tex., Nov. 30, 2017); *accord Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *1 (N.D. Tex. Apr. 24, 2014) ("Under Rule 11(c)(2), '[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's

fees, incurred' for litigating a Rule 11 motion. The court's authority to award reasonable expenses under Rule 11(c)(2) is distinct and separate from its authority to award attorney's fees under Rule 11(c)(4). An award of reasonable expenses under Rule 11(c)(2) is not a sanction for violating Rule 11(b). Accordingly, a party seeking reasonable expenses pursuant to Rule 11(c)(2) is not required to comply with the procedural requirements of Rule 11(c)(2). The court considering a request for reasonable expenses pursuant to Rule 11(c)(2) is not required to apply the substantive requirements of Rule 11(c)(4)-(6) either. Instead, the court applies the requirements of Rule 11(c)(2) itself, which provides that the award of expenses to the prevailing party must be warranted and reasonable." (footnote and citations omitted)).

### Analysis

At the outset, Diamond's Second Rule 11 Motion complies with Rule 11(c)(2)'s safe-harbor provision, and Plaintiffs do not contend otherwise.

And, unlike the Rule 11 motion in *SortiumUSA, LLC v. Hunger*, 2014 WL 1080765, *5-*6, Diamond is not simply making the same arguments for dismissal under Rule 11 that it is raising in its Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim [Dkt. No. 17] under Rules 12(b)(1) and 12(b)(6).

As discussed above, Diamond's Second Rule 11 Motion is properly read as seeking not dismissal but rather a monetary sanction under Rule 11(c)(4) against, jointly and severally, Plaintiffs Johann Rabe and Castro & Co., LLC, Plaintiffs' counsel Joshua S. Milam, and Castro & Co.'s principal John A. Castro, in an amount to be

determined by the Court to be just and equitable under the circumstances – bearing in mind Diamond's reasonable trial-attorneys' fees and actual out-of-pocket, litigation-specific costs expended to date – based on a violation of Rule 11(b)(1) in filing Castro & Co.'s Original Complaint [Dkt. No. 1] and Plaintiffs' First Amended Complaint [Dkt. No. 14] for the improper purpose of harassing Diamond, causing Diamond unnecessary expense, and using this lawsuit as a way to extract unwarranted concessions from Diamond.

Diamond, in support of its Second Rule 11 Motion, repeatedly refers to this as a "frivolous case" or "frivolous litigation," Dkt. No. 28 at 4, 12, 16, and once contends that "Plaintiffs' Team is using this case to harass Diamond and to try and force Diamond to either capitulate to Plaintiffs' demands or waste time and money defending a frivolous claim," *id*. at 21. But, as explained above, Diamond is not asserting that Plaintiffs' Team violated Rules 11(b)(2) or 11(b)(3) and does not try to make the required showings for Rule 11(c)(1) sanctions under those provisions.

Diamond instead asserts that Plaintiffs' Team filed the Original Complaint [Dkt. No. 1] and First Amended Complaint [Dkt. No. 14] for the improper purpose of harassing, causing unnecessary expense to, and extracting unwarranted concessions from Diamond.

Castro & Co.'s Original Complaint alleged, in pertinent part:

9. Castro & Co., LLC (hereinafter "Castro & Co.") is a U.S. based law firm that specializes in International Tax matters. Services provided by Castro & Co. to clients include: U.S. based Federal annual tax compliance, issuing tax opinions on complex International and Tax Treaty compliance issues, tax return amendments, tax planning and

consulting, among other tax matters.

10. On or about May 2015, Castro & Co. was hired by Johann Rabe (hereinafter "Johann Rabe" or "Rabe") to coordinate the correction of his Form W-2s and ensure that any US tax filing obligations were addressed.

11. Johann Rabe brought to the attention of Castro & Co. that his employer, Diamond Offshore Services Limited [("Defendant DO")], had for many years been withholding taxes incorrectly because Defendant DO had failed to adjust Rabe's status after he had renounced his U.S. ties. Defendant DO's failure to update Rabe's status led Defendant DO to withhold taxes from Rabe's check that should not be withheld from a non-resident, non-citizen of the United States.

12. Castro & Co. has tirelessly attempted to work with Defendant DO to get Defendant DO to issue corrected Form W-2s to Rabe for all years effected by the mistaken classification. Castro & Co. has worked with Defendants Munoz and Rosenburg in attempting to get the corrected Form W-2s issued. Despite providing extensive evidence of Rabe's appropriate renunciation of U.S. ties and his non-resident, non-citizen of the United States status, Defendant DO refuses to issue corrected forms as required by Federal Law.

....

13. 26 CFR 31.6051-1(c) governs correction of statements. This section requires (i) if the amount of employee tax under section 3101 deducted and withheld in the calendar year from the wages, as defined in section 3121(a), paid during such year was less or greater than the tax imposed be section 3101 on such wages by reason of the adjustment in such year of an overcollection or undercollection of the tax in any prior year, or (ii) regardless of the reason for the error or the method of its correction, the amount of wages as defined in section 3121(a), or tax under section 3101, entered on a statement furnished pursuant to this section to an employee for a prior year was incorrect, a corrected statement for such prior year reflecting the adjustment or the correct data shall be furnished to the employee. Such statement shall be marked "corrected by Employer." See 26 CFR 31.6051-1(c)(1). Additionally, statements and corrected statement should be furnished by an employer to an employee shall be by January 31 of the succeeding calendar year. See 26 CFR 31.6051-1(d).

14. Defendant DO has been notified by Rabe and Castro & Co. of the errors in the W-2s issued to Rabe and has failed to issue corrected W-2s as required by Federal Law.

....

Castro & Co. would show that it has entered into a contract with Rabe to assist in addressing Rabe's tax predicament. This includes working with Defendant DO to issue corrected tax documents in order to submit those

documents to the United States Internal Revenue Service to correct Rabe's overpayment of tax liability. Castro & Co. would show that multiple requests have been made with Defendant DO and Castro & Co. has provided all available documentation to support Defendant DO's obligation of correcting Rabe's tax statements. However, Defendant DO has outright refused to issue corrected tax forms

Dkt. No. 1 at 2-4. And Plaintiffs' First Amended Complaint alleges, in pertinent part:

This civil action arises from Defendant Diamond Offshore Services Limited's ("Diamond Offshore" herein) wrongful withholding of taxes from Plaintiff Johann Rabe's ("Mr. Rabe" herein), a nonresident alien, wages and refusal to issue corrected W-2s in violation of United States Tax Laws. After discovering Diamond Offshore's fraudulent acts, Mr. Rabe retained Plaintiff Castro & Co., LLC ("Castro & Co." herein) to coordinate with Diamond Offshore the correction of the W-2s and ensure compliance with any U.S. tax obligations. Diamond Offshore remains steadfast and refuses to issue the corrected W-2s.

Plaintiffs seek to compel Defendant to perform their duties mandated by law under applicable tax law.

....

8.  Castro & Co., LLC (hereinafter "Castro & Co.") is a U.S. based law firm that specializes in International Tax matters. Services provided by Castro & Co. to clients include: U.S. based Federal annual tax compliance, issuing tax opinions on complex International and Tax Treaty compliance issues, tax return amendments, tax planning and consulting, among other tax matters.

9.  On or about May 2015, Castro & Co. was hired by Plaintiff Johann Rabe (hereinafter "Johann Rabe" or "Rabe") to coordinate the correction of his Form W-2s and ensure that any US tax filing obligations were addressed.

10.  Johann Rabe brought to the attention of Castro & Co. that his employer, Diamond Offshore Services Limited, had for many years been withholding taxes incorrectly because Diamond Offshore had failed to adjust Rabe's status after he had renounced his U.S. ties. Diamond Offshore's failure to update Rabe's status led Defendant to withhold taxes from Rabe's check that should not be withheld from a non-resident, non-citizen of the United States.

....

11.  Mr. Rabe has been employed with Diamond Offshore for almost two decades and has continuously relocated to various Diamond Offshore rigs located around the world. Mr. Rabe's employment with Diamond Offshore has included assignments in the Ivory Coast, China,

-33-

Vietnam, Kuala Lumpur, Bangladesh, Jakarta, Tunisia, Egypt, Brazil, and Trinidad. Since July 1, 2016, Mr. Rabe has been assigned to Diamond Offshore's Trinidad Shorebase Office.

12.    Mr. Rabe last visited the United States in 2004 and has not returned to the U.S. since.

13.    From January 1, 2008 to June 30, 2016, Mr. Rabe was assigned to Defendant's Macae, Brazil Shorebase Office. On December 1, 2008, Mr. Rabe filed a USCIS Form I-407 (Abandonment of Lawful Permanent Resident Status) and surrendered his green card to the U.S. consulate in Rio De Janeiro, Brazil.

....

14.    Section 7701(b) provides, in pertinent part, that: "An individual is a nonresident alien if such individual is neither a citizen of the United States nor a resident of the United States." [26 U.S.C. § 7701(b)(1)(B).]

15.    Since 2009, Diamond Offshore has not withheld income taxes from Mr. Rabe's wages, but has inexplicably withheld Section 3101 taxes from wages.

16.    In doing so, Diamond Offshore has filed fraudulent Information Statements with the IRS incorrectly identifying Mr. Rabe as a Resident, an incorrect address for Mr. Rabe, and reporting fraudulent wages purportedly paid to Mr. Rabe as defined by 26 U.S.C. § 3121(i)(5).

17. On January 5, 2017, As a result of Diamond's fraudulent actions, the IRS placed a Levy on Mr. Rabe's Wages, Salary, and Other Income. Castro & Co. immediately took action and was able to get the IRS to release the levy.

18.    Despite Castro & Co.'s involvement, and the IRS Levy, Diamond Offshore failed to take any corrective action, continued to withhold Section 3101 taxes from Rabe's wages, and filed fraudulent information returns for taxable year 2017.

....

19.    Castro & Co. has tirelessly attempted to work with Diamond Offshore to get Diamond Offshore to issue corrected Form W-2s to Rabe for all years effected by the mistaken classification. Despite providing extensive evidence of Rabe's appropriate renunciation of U.S. ties and his non-resident, non-citizen of the United States status, Diamond Offshore refuses to issue corrected forms as required by Federal Law.

20.    As a result of Diamond Offshore's actions, Castro & Co. has been unable to perform his contractual obligations to Mr. Rabe – ensuring compliance with U.S. tax laws. Diamond Offshore's acts and omissions have proximately caused Castro & Co. actual damages based on lost revenue under its contract with Mr. Rabe, opportunity cost of working to minimize Diamond Offshore's refusal to issue correct W-2s, and loss of

good will.

....

22.     An actual and substantial controversy exists between Plaintiffs and Diamond Offshore as to the legal status of Mr. Rabe. Diamond Offshore asserts that it cannot validate Mr. Rabe's nonresident status without documentation proving the termination of Mr. Rabe's tax residency and contends that Mr. Rabe's December 1, 2008 I-407 is materially incomplete and does not establish Mr. Rabe's nonresident tax status. Castro contends that the I-407 is sufficient to establish Mr. Rabe's nonresident tax status.

23.     This case is justiciable because Castro is currently refrained from completing its contractual obligations – correcting Mr. Rabe's W-2s – because of Defendant's refusal to follow the law.

24.     Plaintiffs have no plain, speedy, and adequate remedy at law. Therefore, pursuant to 28 U.S.C. § 2201 et seq., Plaintiffs requests a declaration by the Court that Mr. Rabe surrendered his legal permanent status, is a nonresident alien, and issue an order ordering Defendant to issue corrected W-2 forms for taxable years 2009-2017.

....

27.     Castro & Co. would show that it has entered into a contract with Rabe to assist in addressing Rabe's tax predicament. This includes working with Diamond to issue corrected tax documents in order to submit those documents to the United States Internal Revenue Service to correct Rabe's overpayment of tax liability.

28.     Castro & Co. would show that multiple requests have been made with Diamond Offshore and Castro & Co. has provided all available documentation to support Diamond Offshore's obligation of correcting Rabe's tax statements. However, Diamond Offshore has outright refused to issue corrected tax forms.

....

34.     Plaintiffs can and will show that Diamond Offshore issued an information return regarding Mr. Rabe for taxable years 2009-2017.

35.     Plaintiffs can and will show that the information return Diamond Offshore issued was fraudulent as to the wages purportedly paid to Mr. Rabe.

36.     Plaintiffs can and will show that Diamond willfully issued the fraudulent return. Defendant was apprised of Mr. Rabe's filed Form I-407, were contacted by Castro & Co., and even received the IRS Notice of Levy.

....

38.     26 CFR 31.6051-1(c) governs correction of statements. This section requires (i) if the amount of employee tax under section 3101 deducted and withheld in the calendar year from the wages, as defined

-35-

in section 3121(a), paid during such year was less or greater than the tax imposed be section 3101 on such wages by reason of the adjustment in such year of an overcollection or undercollection of the tax in any prior year, or (ii) regardless of the reason for the error or the method of its correction, the amount of wages as defined in section 3121(a), or tax under section 3101, entered on a statement furnished pursuant to this section to an employee for a prior year was incorrect, a corrected statement for such prior year reflecting the adjustment or the correct data shall be furnished to the employee. Such statement shall be marked "corrected by Employer." See 26 CFR 31.6051-1(c)(1). Additionally, statements and corrected statement should be furnished by an employer to an employee shall be by January 31 of the succeeding calendar year. See 26 CFR 31.6051-1(d).

39.     Section 1.6012-1 of the Code of Federal Regulations mandates that an income tax return must be filed by every individual for each taxable year after December 31, 1972, during which he receives $750 or more of gross income if such individual is (i) a citizen of the United States, (ii) a resident of the United States even though not a citizen thereof, or (iii) an alien bona fide resident of Puerto Rico or any section 931 possession as defined in § 1.931-1(c)(1) during the entire taxable year.

40.     Diamond Offshore has been notified by Rabe and Castro & Co. of the errors in the W-2s issued to Rabe and has failed to issue corrected W-2s as required by Federal Law.

Dkt. No. 14 at 1, 3-8 (footnote omitted).

But, leaving aside for the moment the tone and tenor of Mr. Castro's communications with Diamond and its attorneys, Plaintiffs expressly seek by the original and now amended complaints the relief that Diamond contends is motivating Plaintiffs' lawsuit but that Diamond contends is legally and factually unwarranted under federal law: Diamond's issuing corrected W-2 forms to Johann Rabe for taxable years 2009-2017. *See* Dkt. No. 1 at 6; Dkt. No. 14 at 12.

Diamond contends that, under federal law, it cannot do so without additional documentation and that, through its counsel and even outside tax counsel that Diamond has retained, Diamond has repeatedly explained this to Plaintiffs and Mr.

Castro and Mr. Milam.

But, as the allegations in the original and amended complaints bear out, Plaintiffs and, apparently, Mr. Castro and Mr. Milam, do not agree with Diamond's view of what the law permits or requires, and, through their claims against Diamond, Plaintiffs ask the Court to adjudicate these disputed legal and factual issues. That, even in reply, Diamond continues to press its belief that its position – regarding, for example, "what U.S. federal income-tax law requires in order for Mr. Rabe to establish that he terminated his U.S. federal tax-resident status in 2008" and "the known deficiencies in the documentation provided by" Plaintiffs' Team, Dkt. No. 31 at 2 – does not objectively show an improper purpose by Plaintiffs or Plaintiffs' Team as the basis for the original and amended complaints' filing in this case.

That Mr. Castro's offers to settle this litigation involved offers to drop any claims for damages and even an offer to indemnify Diamond against the risks that Diamond has communicated to Plaintiffs' Team and the Court that it sees in issuing the W-2s as Plaintiffs request likewise does not show an objectively ascertainable improper purpose. Plaintiffs' Team's consistent demand that Diamond issue those documents is consistent with its stated purpose in filing, and requested relief in, the original and amended complaints. As Plaintiffs' response notes, Diamond's "contentions are predicated solely upon Plaintiffs' alleged failure to provide documents Defendant asserts are required to have to issue corrected W-2s – an assertion Plaintiffs insist is misplaced and not the sole means available to verify legal permanent status." Dkt. No. 30 at 5.

The record before the Court does not support a finding that an improper purpose to harass or cause unnecessary expense was the but for cause of Castro & Co.'s decision to file the Original Complaint or of Plaintiffs' filing the First Amended Complaint. Neither does the record support a finding of an improper purpose violating Rule 11(b)(1) in the form of Castro & Co.'s or Plaintiffs' suing Diamond and the other dismissed defendants as a means of extracting unwarranted concessions from Diamond.

Again, Diamond has not demonstrated – or attempted to demonstrate – that Plaintiffs' positions on the federal tax law issues in play in this action were legally indefensible, but a finding that the concessions (and relief) that Plaintiffs seek from Diamond – issuing the requested corrected W-2s – would require that showing. By Plaintiffs' lights, as pleaded in the filed complaints for which Diamond seeks Rule 11 sanctions, that relief or (perhaps in settlement of the claims) concessions from Diamond are warranted by governing law. *See, e.g.*, Dkt. No. 30 at 8-9 ("After reaching an impasse with Defendant over the required documents – Plaintiffs contend the threshold issue is improperly claiming Mr. Rabe's wages as U.S. wages but that Mr. Rabe's Form W-8BEN sufficiently addresses Defendant's concerns about Mr. Rabe's status whereas Defendant's insist on obtaining a copy of Mr. Rabe's processed I-407 – Defendants filed Mr. Rabe's 2017 W-2s without making any changes and listing his wages as U.S. wages despite not having been in the U.S. since 2004, forcing Plaintiffs to file this suit."); *id.* at 11 ("Plaintiffs dispute Defendant's assertion that submitting Form I-407 and/or Form 8854 as the sole means of verifying Mr. Rabe's residency

status or that the IRS requires Mr. Rabe provide Defendants with a copy of a processed I-407 Form to eliminate any liability concerning tax withholdings and/or information statements submitted by Defendant.").

And, whatever may or may not be true in other cases filed by Mr. Castro or Castro & Co. in this district, and regardless of the sometimes intemperate tone of Mr. Castro's and Mr. Milam's communications with Diamond and its counsel, the record here does not support a finding that Plaintiffs' manner of prosecuting this case since the original and amended complaints' filing was driven by an improper purpose of causing Diamond or the voluntarily dismissed defendants unnecessary expense or improperly increasing the costs of litigation and forcing settlement. Neither do Diamond's contentions regarding Mr. Castro's status as an attorney – which, by Rule 11(c)(1)'s terms, would be the only basis for sanctions against him as a non-party – support such a finding.

At the same time, the undersigned is not persuaded that Plaintiffs should be awarded expenses under Rule 11(c)(2) simply because the Court should deny Diamond's Second Rule 11 Motion, and Plaintiffs have not offered any other justification for why they should be awarded attorneys' fees under Rule 11(c)(2). *See Hoffman v. Bailey*, Civ. A. No. 13-5153, 2017 WL 1494495, at *4 (E.D. La. Apr. 26, 2017).

## Recommendation

For the reasons explained above, the Court should deny Defendant Diamond Offshore Services Limited's Motion for Rule 11 Sanctions [Dkt. No. 27] and deny

Plaintiffs Castro & Co., LLC and Johann Rabe's request for an award under Federal Rule of Civil Procedure 11(c)(2) of their attorney's fees in responding to Defendant Diamond Offshore Services Limited's Motion for Rule 11 Sanctions [Dkt. No. 27].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 29, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE